# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

EDMUND HENNESSY,

       Plaintiff,

  v.

LORRAINE HAZARD, M.D.,
AUGUSTIN ENAW, M.D.,
MARK SCHNABEL, N.P.,
MARIA ANGELES, M.D.,
LINDA BOOTH, N.P.,
ARTHUR BREWER, M.D.,

      Defendants.

Civil Action No.  08-11724-PBS

## SECOND AMENDED COMPLAINT

## INTRODUCTION

1.      This action arises out of Defendants' failure to provide the Plaintiff with medically necessary treatment for late stage osteoarthritis in his hips that required surgery. Plaintiff brings this action against various medical personnel from UMass Correctional Health Services ("UMCH") for violations of 42 U.S.C. § 1983, the Eighth Amendment of the U.S. Constitution, Article 26 of the Massachusetts Constitution Declaration of Rights, and negligence.

## JURISDICTION AND VENUE

2.      This court has jurisdiction over the Plaintiff's claims of the violation of State and Federal Constitutional Rights under 42 U.S.C. §§ 1331(a) and 1343.  The court has supplemental jurisdiction over the Plaintiff's state law tort claim under 28 U.S.C. § 1367.

3.      The District of Massachusetts is an appropriate venue under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

### PLAINTIFF

4.      Plaintiff Edmund Hennessy is, and at all relevant times has been, a prisoner in the care of the Massachusetts Department of Corrections.  Plaintiff has been incarcerated for approximately thirty-two years.  He is currently confined at MCI-Shirley Medium ("MCI Shirley"), located at P.O. Box 1218, Shirley, MA 01464.  Plaintiff was previously confined at Souza-Baranowski Correctional Center ("SBCC"), located at P.O. Box 8000, Shirley, MA 01464, as well as MCI-Cedar Junction ("MCI CJ"), located at P.O. Box 100, South Walpole, MA 02071.

### DEFENDANTS

5.      Upon information and belief, Defendant Lorraine Hazard M.D. was at all relevant times an employee of UMCH.  Dr. Hazard was Plaintiff's attending physician while Plaintiff was confined at SBCC.  She is sued in both her individual and official capacities.

6.      Upon information and belief, Defendant Augustin Enaw M.D. was at all relevant times an employee of UMCH.  Dr. Enaw was Plaintiff's attending physician while Plaintiff was confined at SBCC.  He is sued in both his individual and official capacities.

7.      Upon information and belief, Defendant Mark Schnabel N.P. was at all relevant times an employee of UMCH.  Mr. Schnabel was Plaintiff's attending nurse while Plaintiff was confined at SBCC.  He is sued in both his individual and official capacities.

8.      Upon information and belief, Defendant Maria Angeles M.D. was at all relevant times an employee of UMCH.  Dr. Angeles is, and was at all relevant times, Plaintiff's attending physician at MCI Shirley.  She is sued in both her individual and official capacities.

9.      Upon information and belief, Defendant Linda Booth N.P. was at all relevant times an employee of UMCH.  Ms. Angeles is, and was at all relevant times, Plaintiff's attending nurse at MCI Shirley.  She is sued in both her individual and official capacities.

10.      Upon information and belief, Defendant Arthur Brewer, M.D. is, and was at all relevant times, the Regional Medical Director of UMCH, located at One Research Drive, Suite 120c Westborough, MA 01581.  He is sued in both his individual and official capacities.

## FACTS

11.      On August 8, 2005, while confined at SBCC, Plaintiff was taken to Tufts-New England Medical Center for an MRI of his back due to long-standing pain in his lower extremities.  The MRI was performed by Dr. Philip Tavares.  *See* MRI Exam Report, attached hereto as Exhibit 1.

12.      On August 11, 2005, the MRI results came back from Tufts-New England Medical Center, which confirmed that Plaintiff had a "right-sided herniated disc at T11-12; degenerative disc disease, predominantly at the L5-S1 level."  Ex. 1.

13.      On November 14, 2005, Plaintiff was taken to Tufts-New England Medical Center for a physical examination.  In a letter from Tufts-New England Medical Center to Dr. Tavares, Tufts recommended that Plaintiff be given further evaluations "to possibly rule out his hip as a source of his pain."  *See* Nov. 14, 2005 Letter, attached hereto as Exhibit 2.

14.      On November 28, 2005, Plaintiff was taken to PrimaCARE Fall River Diagnostic Center for a physical examination.  It was determined there, by Dr. Murray Dimant, that Plaintiff had "marked deformity" in both of his femoral heads.  Dr. Dimant notes in his report that "Comparison with previous studies or MRI would be helpful for further evaluation."  However,

Plaintiff was never brought back to his office for any further evaluation.  *See* PrimaCARE Report dated Nov. 28, 2005, attached hereto as Exhibit 3.

15.     As of November 28, 2005, it had already been determined by doctors at Tufts-New England Medical Center and PrimaCARE Fall River Diagnostic Center that Plaintiff was experiencing extreme pain, due in part to the multilevel degenerative changes in his spine, including a herniated disc and degenerative disease.  *See* Exs. 1 and 2.

16.     Following his physical examinations at Tufts-New England Medical Center and PrimaCARE Fall River Diagnostic Center, Plaintiff continued to complain to prison medical personnel regarding his back and hip pain.  Upon information and belief, Dr. Hazard and Dr. Enaw were the attending physicians at SBCC at that time, and Mr. Schnabel was the attending nurse at SBCC at that time.

17.     On April 3, 2006, Plaintiff was taken to Lemuel Shattuck Hospital ("LSH"), where he was examined by Dr. Kenneth Pariser for the pain in his right hip.  In his assessment, Dr. Pariser notes plaintiff's degenerative disease and avascular necrosis (AVN).  Dr. Pariser also noted plaintiff's osteoarthritis.  Dr. Pariser recommended that Plaintiff "[t]ry to lose 20-30 pounds.  If in fact this does not relieve his pain, then he is a perfect candidate for a total right hip replacement.  If he is unable to lose the weight, he is *still* a candidate for total hip replacement on the right" *See* Report from Dr. Pariser, attached hereto as Exhibit 4 (emphasis added).

18.     On August 18, 2006, Plaintiff filed an Inmate Grievance Form complaining about issues related to his medical condition and the loss of his institutional work assignment.  In his grievance, Plaintiff requested that the administration at SBCC "allow the doctor to treat my illness without interference."  His grievance was subsequently denied by the Institutional

Grievance Coordinator ("ICG").  *See* Inmate Grievance Form, dated 8/18/06, attached hereto as Exhibit 5.

19.     On September 9, 2006, Plaintiff appealed the IGC's decision to then-superintendent Lois Russo requesting, among other things, that the Department of Correction ("DOC") give him the surgery to fix his two deformed hips.  *See* Inmate Grievance Appeal Form, dated 9/9/06, attached hereto as Exhibit 6.

20.     Superintendent Lois Russo denied Plaintiff's appeal on October 18, 2006.  Ex. 6.

21.     On or about February 1, 2007, Plaintiff fell when leaving the shower room at SBCC.  This accident was due, in part, to plaintiff's inability to walk properly due to the increasing pain and weakness in his right hip.  At that point, it had already been approximately ten months since Plaintiff was told by Dr. Pariser that he was a good candidate for hip replacement surgery.

22.     As a result of the slip and fall accident on or about February 1, 2007, Plaintiff had x-rays taken which showed that he had a "femoral neck fracture" in his right hip.  He was only seen once by medical staff at SBCC, and it took almost three months of complaining about the pain in his hip, before he was actually seen by the doctor.  Plaintiff was then given a walking device with wheels that he could use in order to get around the prison.  Upon information and belief, Dr. Hazard and Dr. Enaw were the attending physicians at SBCC at that time, and Mr. Schnabel was the attending nurse at SBCC at that time.

23.     On July 25, 2007, approximately six months after the slip and fall incident at SBCC, Plaintiff filed a UMCH medical grievance complaining of his medical condition.  In this grievance, Plaintiff specifically requested to have his right hip replaced in order to relieve the

worsening pain and suffering.  *See* UMCH Medical Grievance, dated 7/25/07, attached hereto as Exhibit 7.

24.     On July 26, 2007, Plaintiff received a letter from Russell Phelps at UMCH, stating that Plaintiff had been approved for the requested hip surgery, and that the medical department was just waiting for a date from the outside hospital, LSH, for the procedure.  Satisfied that he was finally going to receive this medical treatment, Plaintiff did not feel there was any need to appeal the decision of his medical grievance.  *See* July 26, 2007 Letter, attached hereto as Exhibit 8.

25.     Approximately one month after being approved for the surgery, Plaintiff was taken back to LSH on a referral by Dr. Enaw.  On August 30, 2007, Plaintiff was evaluated by Dr. Carillo at the orthopedic clinic for chronic hip pain.  Dr. Carillo's report concludes that Plaintiff has "end-stage osteoarthritis and AVN of the right femoral head."  Although the report states that the surgeons "would like [Plaintiff's] weight to be in the 170 range," it does not state that this weight loss was a prerequisite to hip surgery.  *See* LSH document dated 8/30/07, attached hereto as Exhibit 9.

26.     Plaintiff's weight at the time of Dr. Pariser's evaluation is listed at 262 pounds.  His weight at the time of his evaluation at LSH's orthopedic clinic is listed at 234.5 pounds.  The "20-30" pound weight loss, that Dr. Pariser only *suggested* in his report, had already been met at the time of the evaluation by the orthopedic clinic.  *See* Exs. 4 & 9.

27.     On September 19, 2007, Plaintiff was transferred from SBCC to MCI-Shirley Medium.  On the transfer document, Plaintiff's weight is listed at 214 pounds.  *See* UMCH Transfer Document, dated 9/19/07, attached hereto as Exhibit 10.

28.     According to a UMCH Nutrition Referral request, filled out by Nurse Practitioner Linda Booth, Plaintiff was referred to the "Nutrition Dietary Counselor" at MCI Shirley on or around January 24, 2008.  However, plaintiff, to date, has not been seen by any dietician.  On the Nutrition Referral Request, Plaintiff was listed as a "No show for Nutrition Appt." on February 20, 2008.  Plaintiff was being held in the Special Management Unit (SMU) on February 20, 2008, which is a lock down unit.  Plaintiff could not appear in MCI-Shirley's medical department unless escorted by staff.  It is the responsibility of Ms. Booth to make sure any scheduled appointments for inmates held in the SMU are met.  *See* Nutrition Referral Request, dated, 1/24/2008, attached hereto as Exhibit 11.

29.     On February 26, 2008, approximately seven months after being told he was approved for hip surgery, Plaintiff submitted a Sick Call Request Form which stated "I am having a problem with pain in my hip if you are not going to give my meds back then fix my hip."  Plaintiff had also already submitted three similar sick call request forms related to his hip pain the previous month.  *See* Sick Call Request Form, dated 2/26/08, attached hereto as Exhibit 12.  Upon information and belief, Dr. Angeles was the attending physician at MCI Shirley at that time, and Ms. Booth was the attending nurse at MCI Shirley at that time.

30.     On February 29, 2008, Deputy Superintendent Scott Anderson responded to plaintiff's letter to Superintendent Duane MacEachern of February 26, 2008, in which Plaintiff requested that he be given the previously approved hip surgery.  In his response to Plaintiff, Mr. Anderson simply stated that, "According to the contractual medical provider you have been evaluated for hip surgery.  I am also informed that this matter has been discussed with you by medical staff at MCI Shirley."  Mr. Anderson did not provide Plaintiff with a decision as to

whether or not the hip surgery would be scheduled. *See* Anderson letter, dated 2/29/08, attached hereto as Exhibit 13.

31.    On March 5, 2008, Plaintiff filed an Inmate Grievance and Appeal Form, in which he stated that "[Y]our medical director's clinical judgment is wrong.  I am in a lot of 'pain' and this is a violation of the Eighth Amendment it contemplates a condition of urgency that may result in degeneration of my hip and other parts of my leg, and the pain is extreme.  All I want is my hip surgery that was ordered; it was to of been in Oct. 2007 but that did not happen.  This deliberate interference with my medically prescribed treatment solely for the purpose of causing me unnecessary 'pain'." *See* Inmate Grievance and Appeal Form, dated 3/5/08, attached hereto as Exhibit 14.

32.    On March 14, 2008, Plaintiff filed a Sick Call Request Form in which he stated that "I have a hard time just walking it is painful all the time and my leg has given out on me a few times if you do not see me about this pain then it is deliberate indifference because you know of my serious medical needs.  I need to see a doctor or go to the outside hospital now: The pain is unbeliefable [sic].  The bone pop's [sic] and shoots pain to my knee and leg." *See* Sick Call Request Form, dated 3/14/08, attached hereto as Exhibit 15.

33.    On March 19, 2008, Plaintiff filed an additional Inmate Grievance Form, in which he stated that "On 7-26-07 I was told by S.B.C.C., H.S.A., Russell Phelps, I was approved for hip surgery, and was told it would happen in October, 2007 but it did not.  The treatment of the Doctor and N.P. has been so egregious and is resuling [sic] in serious damage that may be irreversible to other parts of my leg and back…Schedule me for hip surgery before I need surgery on my other leg, or other parts of my leg, or back." *See* Inmate Grievance and Appeal Form, dated 3/19/08, attached hereto as Exhibit 16.  Upon information and belief, Dr. Angeles

was the attending physician at MCI Shirley at that time, and Ms. Booth was the attending nurse at MCI Shirley at that time.

34.     On March 28, 2008, in response to Plaintiff's UMCH medical grievance appeal, Director of Health Services Terre Marshall stated that the Plaintiff was "non-compliant with dietary counseling that [he] received" and that "UMCH providers will continue to monitor [his] health care concerns."  He also states that his "decision is final."  *See* Marshall letter, dated 3/28/08, attached hereto as Exhibit 17.  Plaintiff has never received any such dietary counseling.

35.     Plaintiff contacted Massachusetts Correctional Legal Services ("MCLS") in early 2008 requesting their help.  On April 2, 2008, Staff attorney Lauren Petit sent a letter to Director of Health Services Terre Marshall and UMCH Medical Director Arthur Brewer, requesting that they ensure that Plaintiff receive the needed surgery.  *See* MCLS letter, dated 4/2/08, attached hereto as Exhibit 18.

36.     On April 11, 2008, Grievance and Appeals Coordinator Dyana Nickl wrote to Hennessy regarding his March 5, 2008 Inmate Grievance and Appeal Form.  In the letter, Ms. Nickl states that "The response to the grievance appears to address all of your concerns," but does not mention Plaintiff's previously approved hip surgery.  Ms. Nickl goes on to say that Plaintiff "may appeal this decision to the Massachusetts Department of Correction, Health Services Division."  *See* Nickl Letter, dated 4/11/08, attached hereto as Exhibit 19.

37.     On April 25, 2008, while Plaintiff was still under the care of Ms. Booth and Dr. Angeles, Ms. Booth came to the SMU detention unit where Plaintiff was being detained.  Ms. Booth was there to meet with Plaintiff for his required "Chronic Disease Management" appointment.  At that time, it was noted that plaintiff's weight was "218 pounds."  Booth also

notes that Plaintiff was "argumentative - only wanted to discuss pain meds + surgery."  *See* Chronic Disease Management Report, dated 4/25/08, attached hereto as Exhibit 20.

38.     By the time Plaintiff met with Ms. Booth on April 25, 2008, he had submitted numerous, unanswered sick call request slips and complaints about his pain and suffering, and had exhausted all remedies to have his medical condition adequately addressed.  Plaintiff was extremely frustrated and under serious emotional distress over the way he was being treated by UMCH services.

39.     In the "Chronic Disease Management" report filed by Ms. Booth, she checked off in "Patient adherence (y/n):  with medications?  yes with diet?  yes with exercise?  yes."  Ms. Booth also checked off in the "Education Provided" section that Plaintiff was educated with "Nutrition, Exercise, Weight Loss."  *See* Ex. 20.

40.     However, at the time of Linda Booth's chronic care report stated above, Plaintiff was receiving the same food provided to every inmate in the SMU unit, and was completely incapable of exercise.

41.     On July 9, 2008, Plaintiff wrote a letter to Dr. Angeles because Ms. Booth would not allow Plaintiff to see Dr. Angeles about his hip pain.  Plaintiff informed Dr. Angeles that he had been told he was "a good candidate for a total hip replacement" when he weighed 262 pounds, even if he was unable to lose weight.  Plaintiff informed Dr. Angeles that he was currently 215 pounds.  *See* July 9, 2008 Letter, attached hereto as Exhibit 21.

42.     On or around July 10, 2008, Plaintiff was informed that he would be transferred from MCI Shirley to MCI Cedar Junction ("MCI CJ") in Walpole, Massachusetts.

43.     On September 16, 2008, MCLS Paralegal Al Troisi sent a letter to Mr. Marshall and Dr. Brewer on Plaintiff's behalf.  In the letter, Mr. Troisi requested that Plaintiff's eligibility

for hip replacement surgery be re-evaluated. Mr. Troisi also requested that Plaintiff be given dietary counseling as well as an effective pain management plan. *See* MCLS Letter, dated September 16, 2008, attached hereto as Exhibit 22.

44. On December 10, 2008, while confined at MCI CJ, Plaintiff filed an Inmate Grievance Form, in which he stated that he has "been asking to be put on a diet to help me lose weigth [sic]" and was told that he "would get [his] surgery over 16 months ago." Plaintiff pleaded for UMCH to "Schedule my surgery and help me lose weight and help me with this pain I am in all day and night." *See* Inmate Grievance Form, dated 12/10/08, attached hereto as Exhibit 23.

45. Upon information and belief, Plaintiff was transferred from MCI CJ to SBCC on or around February 2009.

46. On June 28, 2009, while confined at SBCC, Plaintiff had an appointment with Dr. Carillo at LSH. Dr. Carillo noted that Plaintiff reported he had a pain level of 9 at this time, and required a walker to get around. *See* LSH List Patient Notes, dated 6/28/09, attached hereto as Exhibit 24.

47. On August 6, 2009, more than three years after Plaintiff was told he was a good candidate for hip replacement surgery, Plaintiff underwent a right total hip arthoplasty. The operation was conducted by Dr. Carillo at LSH. *See* LSH Discharge Summary, dated 8/21/09, attached hereto as Exhibit 25. According to a Nutritional Assessment dated August 10, 2009, Plaintiff weighed around 287 pounds at the time of the surgery. *See* Nutritional Assessment, dated 8/10/09, attached hereto as Exhibit 26.

48. On December 16, 2010, more than four years after Plaintiff was told that he was a good candidate for hip replacement surgery, Plaintiff underwent a left total hip arthoplasty. The

operation was conducted by Dr. Carillo at LSH.  *See* LSH Discharge Summary, dated 1/24/11,

attached hereto as Exhibit 27.  According to a Nutritional Assessment dated December 20, 2010,

Plaintiff weighed around 237 pounds at the time of the surgery.  *See* Nutritional Assessment,

dated 12/20/10, attached hereto as Exhibit 28.

49.     Upon information and belief, Plaintiff was transferred from SBCC to MCI Shirley

on or around December 2010, following his left hip replacement surgery.

50.     Although Plaintiff's total hip arthoplasty surgeries were successful, Plaintiff is

required to continue physical therapy two to three times a week in order to work on range of

motion and strengthening.  Plaintiff has not received all of his required physical therapy while

under the care of Dr. Angeles and Ms. Booth at MCI Shirley, and Plaintiff still requires a walker

to get around.

51.     To this date, Plaintiff has never received any dietary counseling and was never

seen by a dietician.  Plaintiff is also not currently on any medically prescribed or mandated diet.

## CAUSES OF ACTION

### COUNT I - VIOLATION OF PLAINTIFF'S EIGHTH AMENDMENT RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT

### *(v. All Defendants)*

52.     Plaintiff repeats, realleges and incorporates herein by reference paragraphs 1

through 51 of this complaint.

53.     Defendants Hazard, Enaw, Schnabel, Angeles, Booth and Brewer were acting

under the color of state law when they were deliberately indifferent to Plaintiff's medical needs

because they were providing medical services to Plaintiff pursuant to a contract with the

Commonwealth of Massachusetts.

54.     Plaintiff suffered from a serious medical condition that required treatment.  As described above, Plaintiff suffered from late stage osteoarthritis in his hips that required surgery.

55.     Defendants Hazard, Enaw, Schnabel, Angeles, Booth and Brewer had actual knowledge of Plaintiff's serious medical condition, but failed to act to remedy the problem. Plaintiff submitted numerous inmate grievances and sick call request forms while under the care of Defendants Hazard, Enaw, Schnabel, Angeles and Booth at SBCC and MCI Shirley.  *See supra*, ¶¶ 18, 23, 29, 31-33.  Furthermore, MCLS sent letters on Plaintiff's behalf directly to Dr. Brewer, requesting that Plaintiff be given his previously approved hip surgery.  *See supra*, ¶¶ 35, 43.

56.     The failure of Defendants Hazard, Enaw, Schnabel, Angeles, Booth and Brewer to follow up with recommendations from hospital doctors, to properly monitor Plaintiff's medical condition, to provide prompt and adequate medical care for a serious medical need, and to schedule Plaintiff's recommended hip replacement surgery in a timely manner, constitutes deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment of the United States Constitution.

57.     As the result of Defendant Hazard, Enaw, Schnabel, Angeles, Booth and Brewer's deliberate indifference to Plaintiff's serious medical needs, Plaintiff has suffered prolonged, extreme pain, and unnecessary infliction of emotional distress, as described above.

## COUNT II – VIOLATION OF PLAINTIFF'S ARTICLE 26 RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT

### *(v. All Defendants)*

58.     Plaintiff repeats, realleges and incorporates herein by reference paragraphs 1 through 57 of this complaint.

59.     Defendants Hazard, Enaw, Schnabel, Angeles, Booth and Brewer were acting under the color of state law when they were deliberately indifferent to Plaintiff's medical needs because they were providing medical services to Plaintiff pursuant to a contract with the Commonwealth of Massachusetts.

60.     Plaintiff suffered from a serious medical condition that required treatment.  As described above, Plaintiff suffered from late stage osteoarthritis in his hips that required surgery.

61.     Defendants Hazard, Enaw, Schnabel, Angeles, Booth and Brewer had actual knowledge of Plaintiff's serious medical condition, but failed to act to remedy the problem. Plaintiff submitted numerous inmate grievances and sick call request forms while under the care of Defendants Hazard, Enaw, Schnabel, Angeles and Booth at SBCC and MCI Shirley.  *See* supra, ¶¶ 18, 23, 29, 31-33.  Furthermore, MCLS sent letters on Plaintiff's behalf directly to Dr. Brewer, requesting that Plaintiff be given his previously approved hip surgery.  *See* supra, ¶¶ 35, 43.

62.     The failure of Defendants Hazard, Enaw, Schnabel, Angeles, Booth and Brewer to follow up with recommendations from hospital doctors, to properly monitor Plaintiff's medical condition, to provide prompt and adequate medical care for a serious medical need, and to schedule Plaintiff's recommended hip replacement surgery in a timely manner, constitutes deliberate indifference to Plaintiff's serious medical needs in violation of the Article 26 of the Massachusetts Declaration of Rights.

63.     As the result of Defendants Hazard, Enaw, Schnabel, Angeles, Booth and Brewer's deliberate indifference to Plaintiff's serious medical needs, Plaintiff has suffered prolonged, extreme pain, and unnecessary infliction of emotional distress, as described above.

## COUNT III – VIOLATIONS OF 42 U.S.C. § 1983

### *(v. All Defendants)*

64.     Plaintiff repeats, realleges and incorporates herein by reference paragraphs 1 through 64 of this complaint.

65.     Plaintiff sues Defendants Hazard, Enaw, Schnabel, Angeles, Booth and Brewer in their official capacities for declaratory and injunctive relief.  Plaintiff also sues Defendants Hazard, Enaw, Schnabel, Angeles, Booth and Brewer in their individual capacities for damages.

66.     Defendants Hazard, Enaw, Schnabel, Angeles, Booth and Brewer were acting under the color of state law when they were deliberately indifferent to Plaintiff's medical needs because they were providing medical services to Plaintiff pursuant to a contract with the Commonwealth of Massachusetts.

67.     Plaintiff suffered from a serious medical condition that required treatment.  As described above, Plaintiff suffered from late stage osteoarthritis in his hips that required surgery.

68.     Defendants Hazard, Enaw, Schnabel, Angeles, Booth and Brewer had actual knowledge of Plaintiff's serious medical condition, but failed to act to remedy the problem. Plaintiff submitted numerous inmate grievances and sick call request forms while under the care of Defendants Hazard, Enaw, Schnabel, Angeles and Booth at SBCC and MCI Shirley.  *See supra*, ¶¶ 18, 23, 29, 31-33.  Furthermore, MCLS sent letters on Plaintiff's behalf directly to Dr. Brewer, requesting that Plaintiff be given his previously approved hip surgery.  *See supra*, ¶¶ 35, 43.

69.     The failure of Defendants Hazard, Enaw, Schnabel, Angeles, Booth and Brewer to follow up with recommendations from hospital doctors, to properly monitor Plaintiff's medical condition, to provide prompt and adequate medical care for a serious medical need, and to schedule Plaintiff's recommended hip replacement surgery in a timely manner, constitutes

deliberate indifference to Plaintiff's serious medical needs in violation of Article 26 of the Massachusetts Declaration of Rights, the Eighth Amendment of the United States Constitution, and 42 U.S.C. § 1983.

70.     As the result of Defendants Hazard, Enaw, Schnabel, Angeles, Booth and Brewer's deliberate indifference to Plaintiff's serious medical needs, Plaintiff has suffered prolonged, extreme pain, and unnecessary infliction of emotional distress, as described above.

## COUNT IV- NEGLIGENCE

### *(v. All Defendants)*

71.     Plaintiff repeats, realleges and incorporates herein by reference paragraphs 1 through 71 of this complaint.

72.     Defendants Hazard, Enaw, Schnabel, Angeles, Booth and Brewer owed Plaintiff a duty of care because they were his sole source of medical care.  Defendants Hazard, Enaw, Schnabel, Angeles, Booth and Brewer were at all relevant times employees of UMCH, which is solely responsible for making decisions with respect to the type, timing and level of medical services needed by inmates.  As Plaintiff's treating physicians and medical staff, Defendants were responsible for making decisions with respect to the type, timing, and level of medical services required by the Plaintiff during the time he was confined at SBCC and MCI Shirley. This includes the determination of whether Plaintiff required specialized care or surgery.

73.     Defendants Hazard, Enaw, Schnabel, Angeles, Booth and Brewer were negligent in their treatment of Plaintiff, as they failed to follow up with recommendations from hospital doctors, to properly monitor Plaintiff's medical condition, to provide prompt and adequate medical care for a serious medical need, and to schedule Plaintiff's recommended hip replacement surgery in a timely manner.

74.     As a direct and proximate result of Defendants' negligence, Plaintiff has suffered prolonged, extreme pain, and unnecessary infliction of emotional distress, as described above.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully moves this Honorable Court to enter a judgment granting the following:

75.     A declaration that the acts and omissions of the Defendants listed herein violated Plaintiff's rights under 42 U.S.C. § 1983.

76.     A declaration that the acts and omissions of the Defendants listed herein violated Plaintiff's rights under the Eighth Amendment to the United States Constitution.

77.     A declaration that the acts and omissions of the Defendants listed herein violated Plaintiff's rights under Article 26 of the Massachusetts Declaration of Rights.

78.     A preliminary and permanent injunction ordering the Defendants to provide Plaintiff with the following:

(a) Prompt, proper and adequate medical care.

(b) A steady, closely monitored pain regimen to relieve and control his post-operative pain.

(c) A regularly scheduled physical therapy regimen to assist Plaintiff with range of motion and muscle strengthening.

(d) Nutrition counseling and access to a nutritionally-appropriate diet to assist Plaintiff with his weight loss.

(e) Follow up with any current and future treatment as well as any recommendations deemed medically necessary by qualified doctors from Lemuel Shattuck Hospital, or by other outside hospitals and clinics.

79.     Enter judgment in favor of Plaintiff for compensatory and punitive damages as allowed by law, against each Defendant listed herein, jointly and severally.

80.     A trial on all matters triable by jury.

81.     Such other equitable relief as this Court deems just and proper.


Dated:  _____, 2011                          Respectfully submitted,

                                                  Edmund Hennessy

                                                  By his attorneys,

                                                  /s/ Kathleen E. Roblez_____
                                                  Roberto M. Braceras (BBO # 566816)
                                                  Kenneth J. Parsigian (BBO# 550770)
                                                  Kathleen E. Roblez (BBO# 676443)
                                                  GOODWIN PROCTER LLP
                                                  Exchange Place
                                                  Boston, MA 02109-2881
                                                  T:  (617) 570-1000
                                                  F:  (617) 523-1231
                                                  rbraceras@goodwinprocter.com
                                                  kparsigian@goodwinprocter.com
                                                  kroblez@goodwinprocter.com

# Exhibit 1

**EXHIBIT 2**   SBCC

TUFTS-NEW ENGLAND MEDICAL CENTER
750 Washington Street
Boston, MA 02111

MRI OFFSITE

NAME: **HENNESSY, EDMUND**                          MR#: **2213017**

ORD PHYS: **TAVARES, PHILIP MD**

DOB: **11/27/1950**          AGE: **54 Years**          SEX: **M**

EXAM DATE: **08/08/2005**

LOCATION: **RADIOLOGY**

EXAM: E-07048518 **MR SPINE LUMBAR**          *LSH # 11-68-73*
CLINICAL DATA:
REASON FOR EXAM: **EVAL HNP**
ORDER COMMENTS:

CLINICAL INFORMATION:  Rule out disc herniation.

TECHNIQUE:  T1, T2 and inversion-recovery sagittal and T2 axial images of the
lumbar spine were acquired.

FINDINGS:  At T10-11 and T11-12, disc degenerative changes are noted with a
small right-sided disc herniation at T11-12 level indenting the thecal sac.  No
compression of the spinal cord is visualized.

At T12-L1, no abnormalities are seen.  At L1-2 to L4-5, disc degenerative changes
and mild bulging is seen without spinal stenosis.  Mild narrowing of inferior portion
of both neural foramina is seen at these levels secondary to disc bulging without
compression of the exiting nerve roots.

At L5-S1 level, degenerative disc disease and moderate diffuse disc bulging are
seen.  There are central and left paracentral disc protrusion visualized at this level
which indents the left side of the thecal sac.  The left neural foramen demonstrates
moderate narrowing with mild narrowing of the right neural foramen.

The distal spinal cord shows normal signal intensities.  The conus is at L1-2 level.

IMPRESSION:  Multilevel degenerative changes.  Left-sided disc protrusion at L5-
S1 level indenting the left-sided thecal sac.  Disc bulging at multiple levels without
high-grade spinal stenosis.  Moderate left foraminal narrowing at L5-S1 level.  End-
plate degenerative changes, predominantly at L5-S1 level.

DICTATED: **RAFEEQUE BHADELIA MD**

APPROVED BY STAFF RADIOLOGIST: **RAFEEQUE BHADELIA MD**  Aug 11, 2005 08:56
AM

TRANSCRIBED BY: RPERRY
\*\*\*\*\*\*\*\*\*\*\*\*\*END OF REPORT 7049518\*\*\*\*\*\*\*\*\*\*\*\*\*

ExamID -  E-07048518  Approved

*Page 1*

HENNESSY, EDMUND

8/11/05

# Exhibit 2







**Tufts-New England Medical Center**

The principal teaching hospital for
Tufts University School of Medicine

November 14, 2005


Philip J. Tavares, M.D.
UMASS Correctional Health
Shirley, MA 01464

Re: Edmund Hennessy, MR# 221 30 17


Dear Dr. Tavares:

Thank you for referring Mr. Hennessy in for neurosurgical evaluation. He is a 55-year-old man who has had approximately 10-year history of back pain with radiation into his right groin, thigh, and lower leg. This has been a chronic problem for him and pain is described as a dull throbbing, almost like a toothache. He describes that this can happen when he is walking or sitting without any definite pattern to it. He occasionally feels like his right leg is falling asleep as well. He denies any weakness, numbness, or bowel and bladder difficulties.

Past Medical History: Significant for hypertension and appendectomy.

Medication: High blood pressure medicine, baclofen, and aspirin.

Allergies: No known drug allergies.

Family History: Noncontributory.

Social History: He is a past smoker and a past drinker, who is a resident of the correctional facility.

Pertinent Review of System: Significant for ankle problem secondary to a bone spur, as well as being deaf in his left ear.

Physical Examination: Reveals a well appearing, moderately obese man in no apparent distress. Speech, affect, and mentation are normal. Lower extremity strength is 5/5 in the left iliopsoas, quadriceps, AT, EHL, and gastrocnemius muscle groups. On the right, he has give-away weakness in the iliopsoas, quadriceps, AT, EHL, and gastrocnemius muscles groups are full. Deep tendon reflexes are 2+ and symmetric in the Achilles and patella bilaterally. Toes are down going. Sensation is intact in the lower extremities to light touch. He can heel walk, but has some difficulty with toe walking on the right.

I reviewed his MRI, which reveal some multilevel degenerative changes. His most significant lesion is a paracentral left disc herniation at L5-S1, which does appear to contact the left S1 nerve root.

Assessment and Plan: Mr. Hennessy has right leg pain of longstanding duration. His most significant MRI finding, however, is a left L5-S1 paracentral disc. I do not see any pathology on the right side of his spine to explain his symptoms. In addition, he has a normal exam with the excepting of some right iliopsoas give-away weakness. I do not feel his pain is related to any radiculopathy. I would recommend further evaluations to possibly rule out his hip as a source of this pain.

Thank you very much for allowing us to take part in his care.

Tufts-New England Medical Center
Established 1796

750 Washington Street
Boston, Massachusetts 02111
Tel: 617-636-5000
www.tufts-nemc.org

# Exhibit 3

*EXHIBIT 3"*

# PrimaCARE P.C.
**Fall River Diagnostic Center**
289 Pleasant Street
Suite 101
Fall River, MA 02721
(508) 674-0600

| Name: HENNESSEY, EDMOND | Massachusetts Department of Corrections |
| W39303 | |
| ROUTINE | |
| Date of Birth: 11/27/1950   Age: 55   Sex: M | Facility: Souza |
| Job #: 123703 | Ordering MD: M. Schnabel, N.P. |

**Date of Exam:** 11/28/2005

**Orders: BILATERAL HIPS**
**CHEST (PA & LATERAL)**

**BILATERAL HIPS**

There is marked deformity of both femoral heads.  The findings may be related to previous trauma.  The acetabuli appear normally formed so I do not believe the findings are due to congenital hip dislocation. In addition, none of the secondary signs of aseptic necrosis are seen to suggest that diagnosis. Comparison with previous studies or MRI would be helpful for further evaluation.

Incidentally noted are degenerative changes of the lower lumbar spine.

**CHEST (PA & LATERAL)**

The PA projection is limited by under penetration.  There is mild hyperinflation.  No other definite abnormalities are seen.

Dictated by: Murray Dimant, M.D.
Reviewed by:

| *** THIS IS AN ELECTRONICALLY VERIFIED REPORT *** |
| 11/29/2005 04:08 PM:  Murray Dimant, M.D. |

T: 11/29/2005 / sl
Job#: 123703

Page 1 of 1

Medical Records

# Exhibit 4

## LEMUEL SHATTUCK HOSPITAL
### 170 Morton Street
### Jamaica Plain, MA  02130
### (617) 522-8110

## LSH RHEUMATOLOGY CONSULT RPT

**Patient Name:** HENNESSEY,EDMUND F
**Medical Record Number:** LS00116873                    **Account Number:** LS0001527001
**Ordering Doctor:** PARISER, KENNETH M MD
**Associated Orders:** RHEUM CLINIC CONSULT LEVEL 3
    **Adm/Reg Date:** 04/03/06
**Date/Time Report Entered:** 04/03/06 2325          **Patient Location:** RHE.L

---

DATE OF SERVICE:

CHIEF COMPLAINT:
Right hip pain.

HISTORY OF PRESENT ILLNESS:
This is a 55-year-old gentleman with a history of bilateral hip pain that had
been present for several years, worse on the right than on the left. In
addition, he gets some hand discomfort and lower back and knee discomfort for
several years. He has a history of obesity, hypertension, chronic obstructive
lung disease.

FAMILY HISTORY:
There is no family history of arthritis.

CURRENT MEDICATIONS:
The patient's current medications include Ventolin 2 puffs four times a day,
enteric-coated aspirin, Pepcid 40 mg a day, baclofen 20 mg three times a day,
Lasix 40 mg a day, Ultram 50 mg three times a day, atenolol 25 mg twice a day,
Vasotec 5 mg a day.

PHYSICAL EXAMINATION:
On examination today, his blood pressure is 156/90, pulse was 66, respiratory
rate was 20, O2 sat 97%, weight 262. His skin showed no psoriatic plaques or
nodules. There were no tophaceous deposits. HEENT was noncontributory. His neck
had a good range of motion of both shoulders and slightly decreased external
rotation. His elbows and wrists were unremarkable. His hand showed mild
degenerative changes. His back was tender only with full flexion. Straight leg
raising was limited by hamstring tightness. Both hips had markedly limited
motion with decrease to 0 degrees of internal rotation, external rotation to 30
degrees, abduction to 30 degrees. He had pain in the right with hip motion,
radiating right into the groin. His knees had crepitance bilaterally but a good
range of motion without large effusions. His ankles and feet were
noncontributory.

LABORATORY TESTS:
No laboratory tests were available, but I do not think this patient has an
inflammatory arthritis. His x-rays showed a multilevel degenerative disease of
his spine and the report of the x-rays of his hips were not actually available.
Also he had deformation of the femoral head. Chest x-ray was unremarkable.

ASSESSMENT:
This patient has degenerative disease, maybe not osteoarthritis but secondary
degenerative disease. Whether he had some mild deformity of the femoral heads or
whether he had trauma with secondary avascular necrosis is unclear, but in
either case, there is no sign that this is an inflammatory arthritis.

**LEMUEL SHATTUCK HOSPITAL**
**LSH RHEUMATOLOGY CONSULT RPT**

**HENNESSEY,EDMUND F**                 **MEDICAL RECORD NUMBER: LS00116873**

RECOMMENDATIONS:
My recommendations to him would be to continue to use his Ultram and add Tylenol
1000 mg with each Ultram up to three times a day. I would also recommend that he
try to lose 20-30 pounds. If in fact this does not relieve his pain, then he is
a perfect candidate for a total right hip replacement. If he is unable to lose
the weight, he still is a candidate for total hip replacement on the right.

I appreciate the opportunity to see your patient.
**Signed by:** <<Signature on File>>
**Signed by date:** 05/25/06
**Dictated By:** PARISER, KENNETH M MD

**Co-Signed by:**
Co-Signed by date:
**Co-Dictated By:**

**Dictated Date:** 04/03/06

CC:

# Exhibit 5

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE FORM
### FORWARD TO INSTITUTIONAL GRIEVANCE COORDINATOR (IGC)

| | | | |
|---|---|---|---|
| **Name** HENNESSEY EDMOND | **Grievance#** 20590 | **Institution** SOUZA-BARANOWSKI CORRECTIONAL | |
| **Commit No.** W39303 | **Housing** L1 | **Date Of Incident** 20060815 | **Date Of Grievance** 20060818 |

**Complaint**

On or about 8/15/06, I was informed by me supervisor at work that my clearance for employment had been revoked by medical per order of some unnamed source because I am under a doctors care for my deformed hips that require me to take Ultram as a pain reliever. I was further informed that I could not work at any job while taking any pain medication, at all. I have been forced to work and live in pain because I do not have anyone to support me and must try to stay employed at all times.

**Remedy Requested**

Allow the doctor to treat my illness without interference from outside sources. Including institutional personnel I did not pose any threat, real or imagined, to myself or others while doing my job. Stop the Civil Rights Violation and Regulation/policy making that violates the State and Federal Laws.

**Staff Recipient**    Carney Ryan M  CPO I

**Staff Involved**

**Signature**

---

## RECEIPT BY INSTITUTIONAL GRIEVANCE COORDINATOR

| | | |
|---|---|---|
| **Date Received** 20060823 | **Decision Date** 20060830 | |

**Signature**    Tocci Thomas M   CO I

**Final Decision**   DENIED

**Decision**

Grievance is denied the type of medication the inmate is taking may impair his work performance and it also recommends that you do not operate heavy machinery or equipment, which a kitchen worker has to do in order to work in the kitchen.

**Signature** _____ **Date** _____

**Denied grievances may be appealed to the Superintendent within 10 working days of Institution Grievance Coordinator's decision.**

---

## INMATE RECEIPT

| | | | |
|---|---|---|---|
| **Name** HENNESSEY EDMOND | | **Institution** SOUZA-BARANOWSKI CORRECTIONAL | |
| **Commit No.** W39303 | **Grievance#** 20590 | **Date Received** 20060823 | |

**Signature.**    Carney Ryan M  CPO I

Exhibit 6

# COMMONWEALTH OF MASSACHUSETTS
## DEPARTMENT OF CORRECTION
### INMATE GRIEVANCE APPEAL FORM
### FORWARD TO SUPERINTENDENT

**"EXHIBIT" "5"**

**Appeal 2 of 2**

| | | |
|---|---|---|
| **Name** | HENNESSEY EDMOND | **Institution** SOUZA-BARANOWSKI CORRECTIONAL |

| **Number** | W39303 | **Housing** L1 |
|---|---|---|

**Appeal Date** 09-SEP-2006   **Date Of Grievance** 18-AUG-2006

**Appeal Received Date** 18-SEP-2006

**Appeal**

Grievance #20590 - On September 30, 2006 my grievance was denied because the grievance coordinator states the "the type of medication the inmate is taking may impair his work performance and it also recommends that you do not operate heavy machinery or equipment, which a kitchen worker has to do."

Be advised that I no longer take that medication based upon this new policy, but rather must now be forced to live and work in pain because I have no one to support me and must maintain my employment to provide my self with the basics and fulfill a parole mandate.

I had been working in the kitchen for almost two years and was not responsible for running any heavy machinery or equipment. I am a vegetable cutter. Cutting vegetables threatens no one. My work performance was just fine before someone decided to stick their nose into something they have no knowledge of. As a result of some yet to be determined source, I am being forced to live and work in pain.

**Remedy Requested**

Let my doctor treat the pain associated with my illness without the interference from this unnamed source.
Give me the operation to fix my two deformed hips. That may relieve the pain permanently.
Additionally, Provide me with this unnamed source and/or the policy, memorandum or directive associated with this new change in institutional work clearance.

**Staff Recipient** Carney Ryan M  CPO I

**Signature** _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## DECISION BY SUPERINTENDENT

**Appeal Received Date** 18-SEP-2006   **Decision Date** 18-OCT-2006   **Decision** DENIED

**Decision By** Russo Lois A  SUPERINTENDENT

**Reasons** Inmates assigned to the kitchen must be cleared by medical staff per policy and clearance cannot be given at this time

**Signature** _____   **Date** _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## INMATE RECEIPT

**Inmate's Name** HENNESSEY EDMOND   **Institution** SOUZA-BARANOWSKI CORRECTIONAL

**Number** W39303   **Appeal Received Date** 18-SEP-2006

**Staff Recipient** Carney Ryan M  CPO I

**Superintendent's Signature** _____

Exhibit 7

"EXHIBIT 6"

# Massachusetts Department of Correction
## Inmate Grievance and Appeal Form

Check level:

Grievance to HSA/MHD ☑

First level appeal
to UMCH or MHM

Second level appeal
to DOC Health Services

Facility: S.B.C.C.

Housing Unit: L-2

Inmate First Name: EDMUND  ☑

ID#: W 39303

Inmate Last Name: HENNESSY  ☑

Date of Birth: 11-27-50

---

**Check one:**

Is grievance related to a:    dental issue ☐
medical issue ☑
mental health issue ☐

Have you submitted a sick slip to speak with a provider for issue described?    Yes ☑   No ☐

Has this issue been previously addressed through the grievance process?    Yes ☐   No ☑

---

**Step 1:** Completed forms may be filed with the HSA/DON/MHD or by placing the form in the Sick Call Box. In special management units, forms may be handed to rounding HSU staff.

**Step 2:** You may appeal the decision of the HSA/DON/MHD to the UMCH Medical Director or MHM Mental Health Director.
- An appeal must be filed within ten (10) working days from the receipt of the decision to grievance.
- You may file the appeal directly with the UMCH Medical Director or MHM Mental Health Director, by sending it to:

    Medical Director                          Mental Health Director
    UMass Correctional Health           MHM Services, Inc.
    333 South Street                          20 Administration Road
    Shrewsbury, MA 01545                Bridgewater, MA 02324

**Step 3:** You may appeal the decision of the UMCH Medical Director or MHM Mental Health Director to DOC Health Services Division

---

I had an MRI on my back because of pain, and they said I should also have them look at my hips. So I had an x-ray done on my hips, the results showed that my hips were deformed. I also had an MRI done at a later date, which showed that there was a crack in the right hip and I needed to have replacement surgery ASAP. Well in February 2007, I had a slip and fall accident coming out of the shower. I made the medical aware of this accident immediately, and then seen them again one time in March 2007. However, the pain still persists and I'm feeling like a constant throbbing pain which has forced me to walk different, my right knee has been effected causing pain there as well. I have two bad hips, lets fix one before the other goes completely. I've repeatly told you about this pain over 70 times.

**Remedy Requested (Attach Additional Sheets As Necessary):**

I would like to have my Right hip replaced. So I do not live with this pain anymore. Its going on 6 months.

Edmund J Hennessy   7-25-07

---

| Date Received: | | Staff Recipient: | | Routed To: | |
|---|---|---|---|---|---|

# Exhibit 8

 University of
Massachusetts
**UMASS.** Medical School

UMass Correctional Health
Souza Baranowski Correctional Center
Harvard Road, P.O. Box 8000
Shirley, MA 01464 USA
978.514.6500 (office)   978.466.3992 (fax)

*A Program of Commonwealth Medicine*

Russell Phelps
HSA

07/26/2007

Dear Mr. Edmond Hennessey (W39303),

I received your formal grievance dated 07/25/2007 specifically regarding your request for surgery on your hip.  After consideration of review of your file and prior conversations, it was determined you have been previously apprised of your status. You have been approved for the procedure and we are awaiting a date from LSH for your surgery.

Thank you for bringing this to my attention.

Sincerely,

*Russell Phelps*

Russell Phelps
HSA

Cc:     Grievance Coordinator
        Inmate File

10979 - Access to Care / B

# Exhibit 9

Signed

**LEMUEL SHATTUCK HOSPITAL**
**170 Morton Street**
**Jamaica Plain, MA  02130**
**(617) 522-8110**

**LSH ORTHOPEDIC CONSULT. RPT**

**Patient Name:** HENNESSEY,EDMUND F
**Medical Record Number:** LS00116873                    **Account Number:** LS0002159622
**Ordering Doctor:** CARRILLO, ADRIANA MD
**Associated Orders:** ORTHOPEDIC CLINIC NEW PT LEV 5
     **Adm/Reg Date:** 08/30/07
**Date/Time Report Entered:** 08/30/07 1515          **Patient Location:** ORT.L

---

DATE OF SERVICE:
August 30, 2007.

This is the first evaluation for this 57-year-old male referred by Dr. Enow for
the evaluation of chronic right hip pain and evaluation for total hip
arthroplasty.

The note that attends the patient does state that this patient has a history of
the Legg-Calve-Perthes disease as well as AVN and osteoarthritis of the right
hip. The note also states that the patient has a greater than 10-year history of
right groin pain that worsened over that 10 year and that he did fall in
February 2007, sustaining a right femoral neck fracture. The patient himself
tells me he was completely well until February 2007 until he fell and since that
time he has essentially been incapacitated with his right hip. I asked him in
several different ways if he had ever had any pain in the right hip, in the
back, if he had any difficulty ambulating, doing stairs with the right leg, all
of which he denied. I asked him if he had trouble when he was a child, again he
denied. Clearly the patient's story is different from the note that accompanies
him.

The MRI report does show AVN of the right hip and the x-ray has clear
osteoarthritis with collapse of the femoral neck and femoral head, all
consistent with end-stage osteoarthritis and AVN of the right femoral
head.

PAST MEDICAL HISTORY:
Significant for hypertension, COPD with an asthmatic component, GERD, morbid
obesity, chronic right hip pain.

ALLERGIES:  HE HAS NO KNOWN ALLERGIES.

SOCIAL HISTORY:
The patient has been incarcerated for 27 years, prior to which he has an
approximate 50-pack-year smoking history. He did stop smoking in 1997. Prior to
incarceration, he has an ethanol abuse history as well as PSA.

PAST SURGICAL HISTORY:
His only surgical history is that of appendectomy at the age of 15. He does note
that he was PPD-negative in November 2006. He is unaware of his last HCV test.

FAMILY HISTORY:
Noncontributory.

REVIEW OF SYSTEMS:

---

LEMUEL SHATTUCK HOSPITAL
LSH ORTHOPEDIC CONSULT. RPT

HENNESSEY, EDMUND F          MEDICAL RECORD NUMBER: LS00116873

His only complaint at this point in time is his right hip pain and his inability
to maneuver and his decreased mobility. Presently for his ADLs, he is unable to
put on socks and he is unable to tie his shoes, so he wears his shoes tied and
slips them on and off.

PHYSICAL EXAMINATION:
Exam reveals a 5-foot 4-1/2 white male who presently weighs 234.5 pounds,
sitting in a rolling walker, in no acute distress. For him to get out of that
and get onto the exam table, he was able to do this by himself but with
difficulty. He has a hip flexion contracture of 15 degrees and he is unable to
further flex beyond 25 degrees. His mobility is quite limited in that his
abduction is the nil, his external rotation is only at 20 and his internal
rotation is 0. His left hip is only abducted to 20 degrees, his external
rotation is at 25 degrees, his flexion is full. Dorsal pedal pulses are 2+ and
equal bilaterally and the capillary refill is full. The remainder of the exam
shows the vital signs to be stable. The patient is afebrile. HEENT: PERRLA.
EOMs intact. Sclera is clear. The oral mucosa is normal. The mucosa is moist.
He has full neck ROM without pain; no evidence of adenopathy.
The lungs show expiratory wheeze left greater than right. Cardiac exam shows an
occasional irregular heartbeat. I appreciate no murmurs. The abdomen is
pendulous. The bowel sounds are present. There is no pain to deep palpation.
Cranial nerves II through XII are intact. It is a nonfocal exam. The patient is
pleasant in terms of cooperation; H e has pain to deep palpation at the lower back.

I am unclear clear as to why the record that accompanies him is not in sync with his
reported history.


LABORATORY DATA:
The labs were drawn today. They are pending.

MEDICATIONS:
His present medications include albuterol MDI 2 puffs four times a day p.r.n.-
the patient reports he uses at two to three times a week. He is on vitamin B
complex. He is on CTM 4 mg p.o. twice a day (The patient denies seasonal
allergies). He is on Benadryl 100 mg p.o. q.h.s. for sleep. He is on Voltaren 75
mg p.o. twice a day, Pepcid 40 mg p.o. twice a day, enteric-coated aspirin 81 mg
p.o. daily, Lasix 40 mg p.o. daily, atenolol 25 mg p.o. twice a day, Vasotec 10
mg p.o. daily, Tylenol 975 mg p.o. three times a day p.r.n. (The patient states
he generally does not take as he knows Percocet has a Tylenol in it), MS Contin
30 mg p.o. every 12 hours, Percocet 2 tablets p.o. four times a day as well as
Metamucil and Colace.

ASSESSMENT:
1. Right hip osteoarthritis with avascular necrosis.
2. Chronic obstructive pulmonary disease with asthmatic component.
3. Morbid obesity.
4. HTN

Prior to this dictation, I spoke with the surgeons involved and they would request
the following before surgery could be done:
1. Pulmonary clearance including PFT's.
2. They would like his weight to be in the 17Q range.

I had told the patient we were aiming for October. This was, however, prior to
speaking with the surgeons. The pulmonary clearance obviously could be done
soon, but he would need to get down in the 170 range prior to his surgery.

When time of surgery does arise, he would obviously need to stop his aspirin and
nonsteroidal for at least 2 weeks prior to his surgery.

**LEMUEL SHATTUCK HOSPITAL**
**LSH ORTHOPEDIC CONSULT. RPT**

**HENNESSEY,EDMUND F**               MEDICAL RECORD NUMBER: LS00116873

If there are any questions, please feel free to call.
**Signed by:** <<Signature on File>>
**Signed by date:** 08/31/07
**Dictated By:** CONNOLLY, MARY PA

**Co-Signed by:**
**Co-Signed by date:**
**Co-Dictated By:**

**Dictated Date:** 08/30/07

CC:

# Exhibit 10

*"EXHIBIT 9"*

## UMASS CORRECTIONAL HEALTH

### INTRASYSTEM TRANSFER FORM

Transferring Facility _____

Name _Hennessey Edmund_ ID# _W39303_ D.O.B. _11-27-50_

Allergies _____

Current Acute Conditions / Problems _____

Chronic Clinics / Problems _____ Last Visit _____

| Medication Name & Dose | Instructions for Taking | Last Time Taken |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
| PEG Interferon Reg # |  |  |

Current Treatments _____

Appointments Scheduled _____

Follow-up Care Needed _____

Consult pending? (check log) _____

Medical Assessment / TB Screening in chart  ☐ Yes  ☐ No   Date _____ Results _____ mm

Physical Disabilities / Limitations _____

Assistive Devices / Prosthetics _____

Therapeutic Diet  ☐ Yes  ☐ No   Type _____

Mental Health History / Concerns _____

    Currently treated by Mental Health   ☐ Yes  ☐ No  _____

    History of Suicide Attempt   ☐ Yes  ☐ No   Date _____

    History of Psychotropic Medication   ☐ Yes  ☐ No

    Previous Psychiatric Hospitalization   ☐ Yes  ☐ No

Substance Abuse History   ☐ Yes  ☐ No

☐ Patient-specific medications and medical record sent.

Prepared by:

Signature and Title _____ Date _____ Time _____

**TRANSFER RECEPTION SCREENING**

Receiving Facility _MCI - Shirley - medium_

S:  Current Medical / MH / Dental Complaint _States no_

Current Medications / Treatment / Diet _States no_
_See MAR, States no_

O:  Physical Appearance / Behavior _calm and cooperative._

Rashes / Infestations _States No_

Deformities: Acute / Chronic _hip problem_

AB _3_  P _76_  R _20_  B/P _124/80_  Wt _214_  O₂ _91%_

A: _____

_Brittt Nt._
Reviewed By Physician  _(signature)_
_12/6/07_
Date and Time

P:  Disposition (Any history of suicide attempt requires an immediate referral to Mental Health.)

  _X_ General Pop.

  ____ Routine Sick Call

  ____ Emergency Referral

  ____ Physician Referral

    ____ Urgent / Routine

  ____ Mental Health

    ____ Urgent / Routine

  ____ Infirmary Placement

  ____ Dental

  ____ OTHER

  _X_ Consent for Treatment / Access Information Given

  ☐ Kitchen Notification of Special Diet, if Applicable

  ☐ KOP Agreement Reviewed / Updated

_S. Kondo Barteyah RN_

Receiving Nurse's Signature

_9/19/07_  _1540_

Date and Time

8329 Rev. 2/02

# Exhibit 11

"EXHIBIT 15"

## UMCH NUTRITION REFERRAL REQUEST

SITE _Shurling_ _—MED_          DATE OF REQUEST _1/24/08_

REQUESTING CLINICIAN _Booth PC_          **LINDA BOOTH NP**

I/M NAME _Hennessy, Emmet L_   I/M ID _W_          I/M DOB _11-27-50_

<u>RATIONALE FOR REQUEST</u>: to include Symptoms, Exam /Lab Results
<u>Please note that this form must be filled out in its entirety and according to the
specific guidelines below or the patient cannot be seen.</u>

- <u>Newly diagnosed diabetic</u>
- <u>Unexplained, unintentional, documented weight loss of > 12 pounds in 12 weeks</u>
- <u>Acute renal failure</u>
- <u>Nutritional complications due to HIV/AIDS</u>
- <u>Nutritional complications due to cancer</u>
- <u>Hyperlipidemia ( cholesterol > 220)</u>
- <u>Chron's disease</u>
- <u>Obesity ( pt must have a BMI > 35 AND must be motivated to decrease weight)</u>

## <u>Please refer to the NUTRITION PROTOCOLS if questions  regarding appropriate referrals arise.</u>

_5'7" wt-227  HAS AVN Rt hip. Needs
THR but Surgeons want wt in 170 - range.
Wt has actually ↑ a bit over past 3mos.
Please due to arrest & diet — goal to be
able to have surgery._

**DO NOT REFER THE FOLLOWING:**
- <u>Unconfirmed Food Allergies</u>
- <u>Vegetarianism</u>
- <u>Food Service related issues/Complaints</u>
- <u>Self-reported weight loss</u>
- <u>Weight loss with a NORMAL BMI</u>
- <u>Supplements/Nutrition support snacks</u>
- <u>Lactose intolerance</u>

_2/20/08
No Show for
Nutrition Appt.
& ditto NUTRI_

**\*\*\*PLEASE NOTE THAT THE HOUSE MENU IS LOW-FAT,LOW-SODIUM, LOW-CHOLESTEROL,AND HIGH-FIBER.**

CLINICIAN SIGNATURE _Booth NC_          CLINICIAN STAMP          **LINDA BOOTH NP**

Exhibit 12

UMASS CORRECTIONAL HEALTH
SICK CALL REQUEST FORM

Print Name: _Edmund Hennessy_   ID#: _W-39303_   #12

Date/Time _2-26-08_   Housing Location: _SMU 1  #12_

Check **ONLY** One Box:   ☑ Medical   ☐ Dental   ☐ Mental Health

Nature of problem or request: _I Am having A problem with_
_pain in my hip if you Are not going To_
_give my meds back Then Fix my hip so I Am out of_
_PAin !!_

I consent to be treated by the healthcare staff for the condition described above.

Inmate Signature _Edmund Hennessy_

**PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA**
**DO NOT WRITE BELOW THIS AREA**

| Date/Time Recieved | Institution | REFERED TO: |
|---|---|---|
| 2/28/08 | PM | ☐ Nurse   ☑ Midlevel   ☐ Physician |
| | Slip Sorted by: | ☐ Mental Health   ☐ Dental   ☑ Other ____ |

Subjective:

Objective:  T _____ P _____ R _____ B/P _____ WT _____

ssessment:     Issue WP gen
                AD Dressel

an [include inmate education]:

ature & Title: _Banti_     Date: _2/28/08_ Time: _1 Pm_

v. 12/04

# Exhibit 13

*EXHIBIT 12*



*The Commonwealth of Massachusetts*
*Executive Office of Public Safety and Security*

*Department of Correction*
## MCI-Shirley
### P. O. Box 1218
### Shirley, Massachusetts 01464
### (978) 425-4341, Fax (978) 514-6601
*www.mass.gov/doc*

**Deval L. Patrick**
*Governor*

**Timothy P. Murray**
*Lieutenant Governor*

**Kevin M. Burke**
*Secretary*

**Harold W. Clarke**
*Commissioner*

**James R. Bender**
**Ronald T. Duval**
**Veronica M. Madden**
*Deputy Commissioners*

**Duane J. MacEachern**
*Superintendent*

February 29, 2008

Mr. Edward Hennessey W-39303
MCI-Shirley / SMU1
P.O. Box 1218
Shirley, MA 01464

Dear Mr. Hennessey:

Your letter to Superintendent Duane J. MacEachern dated February 26, 2008 regarding your disciplinary status and request to obtain hip surgery has been referred to me for response.

Be advised that a disciplinary report was written on February 27, 2008 and will be served in the very near future.

According to the contractual medical provider you have been evaluated for hip surgery. I am also informed that this matter has been discussed with you by medical staff at MCI-Shirley.

I trust this addresses your concerns.

Sincerely,

Scott E. Anderson
Deputy Superintendent

SEA/emc

cc: Duane J. MacEachern, Superintendent
    Kevin Sabourin, HSA
    file

*"Accredited by the Commission on Accreditation for Corrections"*

# Exhibit 14

UMASS CORRECTIONAL HEALTH
UMASS MEDICAL SCHOOL © A Commonwealth Medicine Program

## Inmate Grievance and Appeal Form

Facility: MCI Shirley Med          Grievance ☐   Date:

Inmate First Name: Edward    ID#: W-39303    Appeal ☑   Date: 3-5-08

| Inmate Last Name | Date of Birth | Housing Unit |
|---|---|---|
| Hennessy | 11-29-50 | SMU1 #13 |

**Summary of Grievance or Reason of Appeal (Attach Additional Sheets As Necessary)**

THAT your medical director's clinical judgment is wrong. I am in a lot of "PAIN" And This is A VIOLATION of, The Eighth Amendment iT contemplates A condition of urgency THAT may result in degeneration of my hip, and other PARTS of my leg, And The pain is EXTreme. All I want is my hip surgery That WAS ordered; T was To of been in Oct. 2007 but That did not happen. This deliberate interference with my medically prescribed Treatment Solely for The purpose of causing me unnecessary "PAIN"

**Remedy Requested (Attach Additional Sheets As Necessary)**

Just give me something for This pain if not Then lets get This hip surgery over with. I do not want To live in This "PAIN"

**Inmate Signature**                              **Date**

Completed forms may be filed with the HSA/DON/MHD or placing the form in the Sick Call Box. For inmates in special management units, forms may be handed to a rounding HSU staff.
An inmate may appeal the decision of the HSA/DON/MHD or the LMCH Medical Director.
An appeal must be filed within ten (10) working days from the receipt of the decision by the HSA.
Appeals should be filed with the HSA. For inmates in special management units, forms may be handed to a rounding HSU staff.
An inmate may file the appeal directly with the LMCH Medical Director by sending it to:
    Medical Director
    UMass Correctional Health
    One Research Drive – Suite 210C
    Westborough, MA 01581

**Health Services Unit USE ONLY**

| Date Received: | | Staff Recipient: | | Routed To: | |
|---|---|---|---|---|---|

Exhibit 15

## UMASS CORRECTIONAL HEALTH
## SICK CALL REQUEST FORM

Print Name: _Edmund Fearesey_ ID#: _W-39303_

Date/Time _3-14-08_                Housing Location: _SMC_

Check **ONLY** One Box:    ☒ Medical    ☐ Dental    ☐ Mental Health

Nature of problem or request: _I have a hard time just to walking, it is painfull all the time, And my leg has given out on me A few times, if you do not see me about this pain then it is deliberate indifference because you know of my serious medical needs, I need to see A doctor or go to the out side hospital now, The pain is unbelevable, The bone pop's And shoot's pain to my knee And leg._

I consent to be treated by the healthcare staff for the condition described above.

Inmate Signature _Edmund_

### PLACE THIS SLIP IN MEDICAL BOX OR DESIGNATED AREA
### DO NOT WRITE BELOW THIS AREA

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

REFERED TO:

| Date/Time Recieved | | |
|---|---|---|
| | Institution _Bartll_ | ☐ Nurse   ☒ Midlevel   ☐ Physician |
| | Slip Sorted by: | ☐ Mental Health   ☐ Dental   ☐ Other ___ |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Subjective:

Objective: T _____ P _____ R _____ B/P _____ WT _____

Assessment: _Issue has been addressed._

Plan [include inmate education]: _Will find at next sinc visit_

Signature & Title: _Bartll_                Date: _3/18/08_  Time: _10 Am_

rv. 12/04

Exhibit 16

# UMASS CORRECTIONAL HEALTH

**UMASS MEDICAL SCHOOL** © A Commonwealth Medicine Program

## Inmate Grievance and Appeal Form

**Facility:** MCI Shirley Med

**Inmate First Name:** Edmund   **ID#:** W-39303

**Grievance ☐**   **Date:**

**Appeal ☑**   **Date:** 3-19-08

| Inmate Last Name: | Date of Birth: | Housing Unit: |
|---|---|---|
| Hennessy | 11-27-50 | SMU 1 #12 |

**Summary of Grievance or Reason for Appeal (Attach Additional Sheets As Necessary)**

ON 7-26-07 I was Told by S.B.C.C, H.S.A, Russell Phelps, I was Approved for Hip Surgery, And was Told IT would Happen in October, 2007 BUT iT did NOT. The Treatment of The Doctor, And N.P. has been so egregious, And is resulting in serious damage That maybe irreversible To other parts of my Leg and BACK. I am in pain all The Time. I was Taken off my pain meds because of A D-Report That I have NOT been found guilty of, And I asked The I.P.S. To give me A urine so That I could show I was Takeing my med's. BUT was Told NO! I Think iT is A deliberate purpose of causing me unnecessary pain, Because if The I.P.S. said I was swapping my meds for other drugs like OxyconTin, MeThadone And Klonipin why was I NoT give a urine? Additionally, if The D.O.C. and UMassMedical, And Commonwealth of Mass. PersisT To deny me medical TreaTment and surgery on my hip ThaT are both deformed but The right one is causing me To live in CONSTANT pain I will seek my release by a complaint for Cruel And unusual punishment in court

**Remedy Requested (Attach Additional Sheets As Necessary)**

Schedule me for hip Surgery before I need Surgery on my other Leg, or other parts of my Leg or bACK. Give me something That will stop The pain I Am in! Of course if he now changes his mind because of pressure from outside sources he will also be liable for damages.

**Inmate Signature:** Edmund Hennessy

**Date:** 3-19-08

- Completed forms may be filed with the HSA/DON/MHD or placing the form in the Sick Call Box. For inmates in special management units, forms may be handed to rounding USE staff.
- An inmate may appeal the decision of the HSA/DON/MHD to the UMCH Medical Director.
- An appeal must be filed within ten (10) working days from the receipt of the decision by the HSA.
- Appeals should be filed with the HSA. For inmates in special management units, forms may be handed to rounding USE staff.
- An inmate may file an appeal directly with the UMCH Medical Director, by sending it to:
  Medical Director
  UMass Correctional Health
  One Research Drive - Suite 120C
  Westborough, MA 01581

**Health Services Unit Use ONLY:**

| Date Received: | | Staff Recipient: | | Routed To: | |
|---|---|---|---|---|---|
| | | | | | |

# Exhibit 17

*EXHIBIT 13*

# The Commonwealth of Massachusetts
## Executive Office of Public Safety and Security

*Department of Correction*
*Health Services Division*
*P.O. Box 426*
*Bridgewater, Massachusetts  02324*

*(508) 279-8612*
*Fax# (508) 279-8654*
*www.mass.gov/doc*



**Deval L. Patrick**
*Governor*

**Timothy P. Murray**
*Lieutenant Governor*

**Kevin M. Burke**
*Secretary*

**Harold W. Clarke**
*Commissioner*

**James R. Bender**
**Ronald T. Duval**
**Veronica M. Madden**
*Deputy Commissioners*

March 28, 2008

Edmond Hennessey, W39303
MCI-Shirley-Medium
Harvard Road
P.O. Box 1218
Shirley, MA  01464

Dear Mr. Hennessey:

This is to acknowledge receipt of your March 19, 2008 grievance appeal regarding your health care concerns. Upon receipt of your grievance appeal a member of my staff contacted UMass Correctional Health (UMCH), the contractual medical provider for the Department of Correction, regarding your concerns.

According to documented information by UMCH you have not followed the recommendations of the Lemuel Shattuck Hospital (LSH) Orthopedic Clinic by loosing about 60 pounds. It was reported that you are non-compliant with the dietary counseling that you received. Until the optimal weight is reached at about 170 pounds the surgeons at LSH do not recommend the surgery be performed due to the high risk of complications that may occur due to your weight being high. You do currently have an order for pain management. UMCH providers will continue to monitor your health care concerns and will adjust your treatment plan based on clinical judgment. It is important for you to comply with the recommended treatment plan in order for you to benefit from the services that are being offered.

It appears UMass Correctional Health is offering appropriate health care services as clinically indicated. Therefore your grievance appeal is denied. Be advised that the Director of Health Services decision is final.

Sincerely,

Terre K Marshall

Terre K. Marshall, Director

lmf

CC:    D. Nickl, Grievance and Appeal Coordinator, UMass Correctional Health

# Exhibit 18

"EXHIBIT 13"

## MASSACHUSETTS CORRECTIONAL LEGAL SERVICES
8 WINTER STREET, BOSTON, MA 02108-4705

617-482-2773; WATS 800-882-1413
FAX 617-451-6383
State Prisoner Direct Dial *9004#
County Collect Calls 617-482-4124
www.mcls.net

April 2, 2008

Terre Marshall, Director
DOC Health Services
12 Administration Rd
PO Box 426
Bridgewater, MA 02324

Arthur Brewer, M.D.
Medical Director
UMass Correctional Health
One Research Drive, Suite 120C
Westborough, MA 01581

Re:    Edmund Hennessy, W-39303

Dear Ms. Marshall and Dr. Brewer:

        I write regarding Mr. Hennessy, a prisoner at MCI-Shirley, who contacted my office with concerns about his health care.

        Mr. Hennessy reports the following: He was approved over 6 months ago to receive hip surgery on his right hip. He understood he was to receive the surgery in October 2007, but did not. He was told that he needed to lose weight in order to get the surgery but his request to be put on a medical diet has been refused. Mr. Hennessy's pain medications for the serious pain resulting from the hip condition have been discontinued due to a disciplinary report he received. The hearing for that report has not yet been held.
        Please look into Mr. Hennessy's medical care and ensure that he receives the needed surgery as soon as possible. If he is required to lose weight prior to the surgery, please ensure that he is assisted in achieving this by getting a medical diet or meeting with the dietician. Finally, please ensure that Mr. Hennessy is offered a pain control regime effective for his level of pain.
        Please find enclosed the releases signed by Mr. Hennessy authorizing you to release this information to me. They are the previous forms for DOC releases as they were sent to him prior to our receipt of the new DOC Health Services release. I have sent him a new release and will forward it upon my receipt. Thank you for your attention to this matter.

                Sincerely,

                Lauren Petit
                Staff Attorney

Cc:    Health Services Administrator, MCI Shirley

# Exhibit 19

University of
Massachusetts
**UMASS** Medical School

UMass Correctional Health
333 South Street
Shrewsbury, MA 01545

*A Program of Commonwealth Medicine*


Dyana Nickl
Grievance and Appeals Coordinator

04/11/2008

Edmond Hennessey, W39303
MCI Shirley

Dear Mr. Hennessey:

I received your formal appeal dated 03/05/2008 corresponding to your **grievance that you filed**
on 03/03/2008 while you were at MCI Shirley.  Your grievance concerned your request to have
certain medications and was answered by the Health Services Administrator on 03/04/2008.

The response to the grievance appears to address all of your concerns.  It is not uncommon when
a patient has been responding well to methadone for a long period of time, for a provider to make
the clinical decision to decrease to evaluate the response. Providers have sole province in
determining treatment based on clinical judgment. Treatment plans are not changed through the
grievance or appeal process.

You may appeal this decision to the Massachusetts Department of Correction, Health Services
Division. Appeals must be directly forwarded to:

> Director
> Massachusetts Department of Correction
> Health Services Division
> 12 Administration Rd.
> P.O. Box 426
> Bridgewater, MA 02324

Thank you,

Dyana Nickl
Grievance and Appeals Coordinator

# Exhibit 20

"EXHIBIT Case 1:08-cv-11724-PBS   Document 16-2   Filed 05/18/09   Page 18 of 21

**Massachusetts Department of Correction**                    **Chronic Disease Management**

| Inmate Name: Hennessey Edmund | Inmate # (w)39303 | DOB: 11/27/50 | Institution Smed | Date: 4/25/08 | Time: 1pm |

Circle chronic diseases:

| 1. Asthma/COPD | 2. Seizures | 3. Diabetes | 4. HIV | 5. Cardiac/HTN | 6. Dyslipidemia | 7. Hepatitis C | 8. Other |

**Allergies**
NKDA

**CD Med List**
ASA
Voltaren
Enalapril
Prilosec
Lasix
Albuterol (m) I
Ventolin

**Vital Signs**

| Temp | |
| BP 126/70 | |
| Pulse | |
| Resp | |
| PEFR | |
| Wt 218  Ht 5'7" | |
| BMI | |

**Asthma**
1. # short acting beta agonist canisters in last 3 months? 6
2. # of nebulizer Rx in the last month? O
3. # times awakening with asthma symptoms per week? 0
4. Have you used beta agonist ☐ More ☒ Less ☐ No chg
**HIV/HCV (Y/N)**
Nausea/vomiting? ___ Abdominal pain/swelling? ___
Diarrhea? ___ Rashes/lesions? ___

**CV/Hypertension (Y/N)**
Chest Pain? No SOB? No Palpitations? No Ankle edema? No   CAD Risk ___ High ___ Moderate ___ Low
Patient adherence (Y/N): with medications? yes with diet? yes with exercise? yes   SMU
Comment:

**Seizure Disorder:**
# of seizures since last visit? ___
Change from last visit ☐ Incr ☐ Dec
☐ No change

**Diabetes Mellitus**
# Hypoglycemic reactions since last visit? ___
Weight loss/gain ↑↓ ___ #lbs ___ %

**Describe:**
(HTN) 2°
HW
Obesity

**For all diseases, describe new symptoms since last visit:**
No SO breathing issues - does not use MDI - last used months
Ago   90 glucitis
Argumentative - only wanted to discuss plan meds & surgery
became loud + interrupted conversation - unable to
fully complete exam - amb c Rolling walker back to
cell.

| General: J AD | Abdomen: Obese (DBS) |
| HEENT: no apparent issues; sniffing at times | Extremities: Edema |
| Neck: ___ NAS | Neurological: WNL  ↓ bat 2° RT DJD |
| Heart: CTA @ cord | GU/rectal: |
| Lungs: CTA @ cord | Other: |

| Most Recent Results: Date 1/24/08 | Total Chol 174 | TG 98 | HDL 47 | LDL 107 | Hgb A1c | HIV VL | CD4 |
| Range of BP results | | Range of fingerstick glucose: | 90 CR>60 BHI |

| Assessment/Plan: | No Int | Med Change | Education | Degree of Control | | | | Clinical Status | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Good | Fair | Poor | NA | Improved | No Change | Worse | NA |
| 1. Cardiac/HTN | ☐ | ☐ | ☒ | ✓ | | | | | | | |
| 2. Diabetes | ☐ | ☐ | ☐ | | | | | | | | |
| 3. Dyslipidemia*Controlled/Uncontrolled** | ☐ | ☐ | ☐ | * | | ** | | ✓ | | | |
| 4. Asthma/COPD | ☐ | ☐ | ☒ | ✓ | | | | ✓ | | | |
| 5. HIV *Controlled/Uncontrolled** | ☐ | ☐ | ☐ | * | | ** | | | | | |
| 6. Seizures | ☐ | ☐ | ☐ | | | | | | | | |
| 7. Hepatitis C Obesity | ☐ | ☐ | ☒ | | | | | ✓ | | | |
| 8. Other DJD RT hip | ☐ | ☐ | ☒ | | ✓ | | | | | | |

Plan
- D/C albuterol
- no ∆ medications

Education Provided: ☒ Nutrition ☒ Exercise ☒ Weight Loss ☐ Test Results ☐ Treatment Plan Compliance ☐ Other:

Return for next visit? ☐ 1 month ☐ 2 months ☐ 4 months ☒ Other 3mos   Discharged from CCC: (disease)

Provider Signature: Booth   SMU   LINDA BOOTH NP

9069                                                                                                    3/10/2008

# Exhibit 21

Dear Dr. Angeles                 7-9-08

I am writing to you in regards too your N.P. Booth, not letting me see you.

Plus she told me that I did not have a brake in my hip, all that was wrong was that I had arthritis. Well she dose not know what she is Talking about. Doctor I am in a lot of pain, just sitting over here in S.M.U..

I want you to know that I have Appealed, the disiplinary report to the courts. Plus I have a copy of one of my Sick Slips, that says, the D.O.C. Took a urine from me that came back C-) for my med's but that is a lie becouse, I was never given A urine. But I ask to be given A urine to show that I was Takeing my med's, and was refused.

Before I had the slip up in S.B.C.C.. I have A doctor tell me that I was A good candidate for A Total hip replacement And my weight was 262 and to try, And lose 20-30 pounds. If I am unable to lose the weight I was still A good candidate for Total hip replacement.

1 of 2



I have lost weight right now I am 215 or so. Doctor I have been trying to see the Nutritionist from the time I was told to lose some weight, and I see that you say I was a <u>NO</u> show for Appt. 2/20/08. I was in S.M.U. so why did I not get called.

Doctor I need something for this pain its getting exasperating by lack of Medical Treatent, And as I sit here, waiting to be Transferred to S.B.C.C. without being able to, Move I'm not in a good position to say the least.

copy, file
Doctor Angeles

Sincerely,

Edmund Hennessy
Edmund Hennessy
SMU1 #12 W-39303

# Exhibit 22

"EXHIBIT It
1 of 2)"

**MASSACHUSETTS CORRECTIONAL LEGAL SERVICES**
8 WINTER STREET, BOSTON, MA 02108-4705

617-482-2773; WATS 800-882-1413
FAX 617-451-6383
State Direct Dial *9004#
County Collect Calls 617-482-4124
www.mcls.net

COPY

September 16, 2008

Terre Marshall, Director
DOC Health Services
12 Administration Road
P.O. Box 426
Bridgewater, MA 02324

Arthur Brewer, M.D.
Medical Director
UMass Correctional Health
333 South Street, Suite 400
Shrewsbury, MA 01545-7807

### Re: Edmund F. Hennessy, W-39303, MCI-Cedar Junction

Dear Ms. Marshall and Dr. Brewer:

I am writing on behalf of Mr. Edmund Hennessy, who is a prisoner at MCI-Cedar Junction.

Mr. Hennessy suffers from AVN and end-stage osteoarthritis of the right hip with collapse of the femoral neck and femoral head. On 8/30/07, Mr. Hennessey received an orthopedic consult that resulted in a determination that Mr. Hennessey needed surgery on his right hip after he received pulmonary clearance and lost approximately 60 pounds, which would bring his weight down to 170 pounds. To date, Mr. Hennessey has lost approximately 25 pounds as he reports he weights about 215 pounds. Please be aware that Mr. Hennessey is having great difficulty losing the rest of the weight because he cannot exercise due to the hip injury. Mr. Hennessey is requesting he be given another orthopedic consult to see if the surgery can proceed at his current weight. I have enclosed the medical records from Mr. Hennessey's orthopedic consult of 8/30/07 for your review and action.

In addition, it would be beneficial to provide Mr. Hennessey with dietary counseling to help him reach the goal of losing more weight. Please also be aware that Mr. Hennessey reports he will not refuse dietary counseling if it is offered to him.

Lastly, Mr. Hennessey reports he suffered from great pain in his hip every day and that he has been overcompensating for his injury and he believes this is causing damage to his knees and back. Mr. Hennessey is requesting an effective pain management plan until such time as he receives the surgery he needs.

EXHIBIT 2 of 2

Please schedule Mr. Hennessey for an orthopedic consult and provide him with dietary counseling and an effective pain management plan.  Thank you for your consideration of these requests.

I have enclosed medical releases signed by Mr. Hennessey.  Please respond to this letter and Mr. Hennessey's medical needs.

Sincerely,

COPY

Al Troisi
Paralegal

cc:    MarkWaitkevich
       Health Services Administrator
       MCI-Cedar Junction

# Exhibit 23

# Massachusetts Department of Correction
# Inmate Grievance and Appeal Form

| | |
|---|---|
| **Facility:** MCI CJ | **Housing Unit:** A-3 # 1 |
| **Inmate First Name:** Edmund | **ID#:** W-39303 |
| **Inmate Last Name:** Hennessy | **Date of Birth:** 11-27-50 |

Check level:

Grievance to HSA/MHD [X]

First level appeal
To UMCH or MHM [ ]

Second level appeal
To DOC Health Services [ ]

**Check one:**

Is grievance related to a:
Dental Issue [ ]
Medical Issue [X]
Mental Health Issue [ ]

Have you submitted a sick slip to speak with a provider for issue described?   Yes [X]   No [ ]
Has this issue been previously addressed through the grievance process?   Yes [X]   No [ ]

**How to file a grievance or appeal:** refer to UMCH policy 12.00 for details

Step 1: Completed forms may be filed with the HSA/DON/MHD or by placing the form in the Sick Call Box. In special management units, forms may be handed to rounding HSU staff.

Step 2: You may appeal the decision of the HSA/DON/MHD to the UMCH Medical Director (for medical and dental issues) or MHM Mental Health Director (for mental health issues).

- An appeal must be filed within ten (10) working days from the receipt of the decision to deny the grievance.
- You may file the appeal directly with the UMCH Medical Director or MHM Mental Health Director, by sending it to:

Medical Director
UMass Correctional Health
333 South Street
Shrewsbury, MA 01545

Mental Health Director
MHM Services, Inc.
20 Administration Road
Bridgewater, MA 02324

Step 3: You may appeal the decision of the UMCH Medical Director or MHM Mental Health Director to: Director, DOC Health Services Division, 12 Administration Road, PO Box 426, Bridgewater, MA 02324

**Summary of Grievance (Attach Additional Sheets As Necessary):**

In Feb. ,2002 I had a slip & fall accident coming from the showers. I made this known to medical. It has been almost 2 years now living in constant pain even with meds. I need a walker just to get around. I have been here in MCICJ for 5 months, and still in pain do not walk right. Your Doctor ses's me and tells me lie's. I have been asking to be put on a diet to help me lose weigth. That has been going on before I came to MCICJ. I was told I would get my surgery over 16 months ago and still I haven't had it if I was on the streets I would of had it by now!!! If the DOC and UMASS Medical, and the COMM.OF MASS persist in your denial of real medical treatment, and surgery it will be cruel and unusual puishment and you all will be liable for damages.

**Remedy Requested (Attach Additional Sheets As Necessary):**

Schedule my surgery and help me lose weight and help me with this pain I am in all day and night. The med's I am given at night work for about 1& ½ hours then I wake up ever hour or so. If I do not go to this yard I lose my rec. Schedule me to see the Doctor, and stop lieing to me and answer my sick slips.

| **Inmate Signature:** _Edmund Hennessy_ | **Date:** 12-10-08 |
|---|---|

**Health Services Unit Use ONLY:**

| Date Received: | Staff Recipient: | Routed To: |
|---|---|---|

# Exhibit 24

DATE: 06/30/09 @ 1803       Lemuel Shattuck Hospital       **PAGE 1**
USER: BBEAZER       List Patient Notes

**Patient: HENNESSEY,EDMUND**
Account #: LS0002950152       Unit #: LS00116873

Age/Sex: 58 M       Attending: CARRILLO,ADRIANA MD
Location: 8NO.L       Admitted: 06/28/09 at 0930
Room/Bed: N803-2       Status: DIS IN

| | Date | Time | By | | Care Prov Type |
|---|---|---|---|---|---|
| Occurred: | 06/28/09 | 1408 | JMB | Jeanne M Boyd | RN |
| Recorded: | 06/28/09 | 1422 | JMB | Jeanne M Boyd | RN |

Category: Nurse

Admission Note:
The patient, HENNESSEY,EDMUND, 58 y/o, M admitted by CARRILLO,ADRIANA MD, to
8NO.L for right total hip replacement.  Pt presents ambulatory with walker
reports pain level 9 on adult scale.  Pt is obese weight 274 lbs relays unable
to loose weight as diet wasn't changed at facility.  Overall pleasant and
cooperative, alert and oriented.  Pt also reports hx of HTN, osteoarthritis
DJD, and deformed hips.  Denies allergies, NKDA.  VS temp 98.6-pulse 54-RR 18
BP 161/82. Skin dry and intact, breaths clear, bowel sound positive a quads.
The patient was given written information on Hospital policies, HIPAA Notice of
Privacy Practices, Patient's Rights and Responsibilities, Patient and Family
Education on Pain Management, Advance Directives and Health Care Proxy and Fall
Prevention Program Brochure were explained and discussed with patient:

( ) Yes      ( ) No      If No, enter comment:

| Note Type | Description | Date | Time | Add |
|---|---|---|---|---|
| No Link | | 06/28/09 | 1408 | |

| | Date | Time | By | | Care Prov Type |
|---|---|---|---|---|---|
| Occurred: | 06/28/09 | 1519 | RW | Renee Waterhouse | RN |
| Recorded: | 06/28/09 | 1523 | RW | Renee Waterhouse | RN |

Category: Nurse

D:Pt. with DJD, came in this am for OR tomorrow. Will be NPO after Mn for right
total hip replacement. LS clear. Pos. BS. C/O pain #10. Uses rolling walker to
amb.

A:Given MS contin 30 mg po at 2pm, EKG was done and lab work Admitted by ortho
pa.

R:Preop teaching will be done tonite more in depth, he does understand, he's
been waitng 2 years for surgery.

Patient Teaching:
* Medication Teaching (name/ dose/ frequency/ route/ indication/ and side
effects to report):

*Safety (precautions,medical equipment, discharge):

*Methods and Response to Teaching:

```
DATE: 06/30/09 @ 1803              Lemuel Shattuck Hospital                    PAGE 2
USER: BBEAZER                       List Patient Notes
```

Patient: HENNESSEY, EDMUND
Account #: LS0002950152                          Unit #: LS00116873

| | Date | Time | By | | Care Prov Type | (Continued) |
|---|---|---|---|---|---|---|
| Occurred: | 06/28/09 | 1519 | RW | Renee Waterhouse | RN | |
| Recorded: | 06/28/09 | 1523 | RW | Renee Waterhouse | RN | |

Category: Nurse

*Barriers to teaching if any:

| Note Type | Description | Date | Time | Add |
|---|---|---|---|---|
| Problem | Pain: Intrapartal | 06/28/09 | 1519 | |

| | Date | Time | By | | Care Prov Type |
|---|---|---|---|---|---|
| Occurred: | 06/28/09 | 1846 | AO | Austin Oriakhi | LPN |
| Recorded: | 06/28/09 | 1923 | AO | Austin Oriakhi | LPN |

Category: Nurse

D:PATIENT IS A 58 Y/O MALE WITH DJD. PRE-OP FOR RIGHT TOTAL HIP REPLACEMENT
TOMORROW. PMH OF HTN, OSTEOMYELITIS, DJD, DEFORMED HIPS. ALERT AND ORIENTED X3.
AMBULATES WITH ROLLING WALKER.

A:PT MAINTAINED ON BLOOD PRESSURE THERAPY AND PAIN MGT WITH MORPHINE SULFATE CR
30MG. WAS MEDICATED WITH MS CONTIN 30MG PO X1 AS ORDERED. PT WAS ASSESSED WITH
LUNG SOUND CTA, POSITIVE BOWEL SOUNDS X4 QUADS. MEDICATED AS ORDERED. WILL BE
NPO AFTER MIDNIGHT FOR POSSIBLE PROCEDURE TOMORROW. ASSISTED WITH CARE AS
NEEDED.

R:PT STABLE. PRE-OP TEACHING DONE. VITAL SIGNS WNL. WILL CONTINUE TO MONITOR
FOR CLINICAL CHANGES.

Patient Teaching:
* Medication Teaching (name/ dose/ frequency/ route/ indication/ and side
effects to report):

*Safety (precautions,medical equipment, discharge):

*Methods and Response to Teaching:

*Barriers to teaching if any:

| Note Type | Description | Date | Time | Add |
|---|---|---|---|---|
| Problem | Pain: Intrapartal | 06/28/09 | 1846 | |

| | Date | Time | By | | Care Prov Type |
|---|---|---|---|---|---|
| Occurred: | 06/29/09 | 0449 | AO | Austin Oriakhi | LPN |
| Recorded: | 06/29/09 | 0518 | AO | Austin Oriakhi | LPN |

Category: Nurse

DATE: 06/30/09 @ 1803                    **Lemuel Shattuck Hospital**                    PAGE 3
USER: BBEAZER                              List Patient Notes

Patient: HENNESSEY, EDMUND
Account #: LS0002950152                                    Unit #: LS00116873

```
            Date     Time By                                  Care Prov Type  (Continued)
Occurred: 06/29/09 0449 AO  Austin Oriakhi                    LPN
Recorded: 06/29/09 0518 AO  Austin Oriakhi                    LPN
```

Category: Nurse

D: PATIENT DJD. PRE-OP FOR RIGHT TOTAL HIP REPLACEMENT TOMORROW. PMH OF HTN,
OSTEOMYELITIS, DJD, DEFORMED HIPS. ALERT AND ORIENTED X3. AMBULATES WITH
ROLLING WALKER.

A: PT MAINTAINED NPO FROM MIDNIGHT FOR POSSIBLE TOTAL HIP REPLACEMENT IN THE
MORNING. ON BLOOD PRESSURE THERAPY AND PAIN MGT WITH MORPHINE SULFATE CR 30MG.
WAS MEDICATED WITH MS CONTIN 30MG PO X1 AS ORDERED. PT WAS ASSESSED WITH LUNG
SOUND CTA, POSITIVE BOWEL SOUNDS X4 QUADS. ASSISTED WITH CARE AS NEEDED.

R: PT STABLE. PRE-OP TEACHING DONE. VITAL SIGNS WNL. WILL CONTINUE TO MONITOR
FOR CLINICAL CHANGES.

Patient Teaching:
* Medication Teaching (name/ dose/ frequency/ route/ indication/ and side
effects to report):

*Safety (precautions, medical equipment, discharge):

*Methods and Response to Teaching:

*Barriers to teaching if any:

```
Note Type            Description                        Date       Time Add
Problem              Pain: Intrapartal                  06/29/09   0449
Problem              Pre-Operative Care                 06/29/09   0449
```

```
            Date     Time By                                  Care Prov Type
Occurred: 06/29/09 1231 JAA Joseph A Achu                    LPN
Recorded: 06/29/09 1243 JAA Joseph A Achu                    LPN
```

Category: Nurse

PAIN.
D=PT WITH DJD. PMH OF HTN. OSTEOMYELITIS, DJD. DEFORMED HIPS.
A=ASSISTED WITH CARE. MAINTAIN ON BLOOD PRESSURE THERAPY. AMBULATING WITH
   ROLLING WALKER. ON  M.S CONTIN 3OMG PO TID FOR PAIN MANAGEMENT. SURGERY TO
   RIGHT HIP CANCEL TODAY. LUNG SOUND CTA. POSITIVE BOWEL SOUND IN ALL 4
   QUADRANTS.
R=VSS. STABLE. NO SOB. NO RESP DISTRESS NOTED OR REPORTED. CONTINUE TO MONITOR FOR
   ANY CLINICAL CHANGES.

```
Note Type            Description                        Date       Time Add
No Link                                                 06/29/09   1231
```

DATE: 06/30/09 @ 1803          Lemuel Shattuck Hospital                    PAGE 4
USER: BBEAZER                      List Patient Notes

Patient: HENNESSEY, EDMUND
Account #: LS0002950152                          Unit #: LS00116873

```
               Date      Time By                        Care Prov Type
Occurred: 06/29/09 2230 AOI Ann O IRORERE               RN
Recorded: 06/29/09 2237 AOI Ann O IRORERE               RN

Category: Nurse
```

D: 58Y/O MALE PT ADMITTED  FOR LEFT TOTAL HIP REPLACEMENT WHICH WAS POSTPUNED
TO A LATER DATE AS PT WAS STILL ON ASPIRIN FROM HIS FACILITY. ALERT AND
ORIENTED X3, AMBULATES WITH ROLLING WALKER C/O PAIN 7/10.

A: PT MOVED TO 802 BED 4. CONTINUE ON PAIN MANAGEMENT WITH MS CONTIN 30MG PO
TID, HAD OTHER MEDS AS ORDERED. PT IS DISCHARGED, AWAITING PICK UP IN AM.

R: CALM AND AFEBRILE. CONTINUE TO MONITOR FOR CLINICAL CHANGES.

Patient Teaching:
* Medication Teaching (name/ dose/ frequency/ route/ indication/ and side
effects to report):

*Safety (precautions,medical equipment, discharge):

*Methods and Response to Teaching:

*Barriers to teaching if any:

```
Note Type              Description                      Date      Time Add
Problem                Pain: Intrapartal                06/29/09  2230
```

```
               Date      Time By                        Care Prov Type
Occurred: 06/30/09 0409 ANA Anna Nancy Accime           RN
Recorded: 06/30/09 0425 ANA Anna Nancy Accime           RN

Category: Nurse
```

D: PT ADMITTED FOR DEJENERATIVE JOINT DISEASE OF THE RIGHT HIP. A&OX3. LS CTA.
ABD SOFT +BS. AMBULATORY WITH ROLLING WALKER. NO COMPLAINT OF PAIN.

A: RECEIVED IN BED SLEEPING EASILY AROUSABLE TO VOICE. PO FLUIDS OFFERRED AT
BEDSIDE. MAINTAINED ON PAIN MANAGEMENT WITH MS CONTIN 30MG PO TID. PT IS
DISCHARGED AND AWAITING TO BE PICKED UP IN AM. HIP SURGERY RESCHEDULED IN 2WKS.
PT ASSISTED WITH CARE AS NEEDED.

R: AFEBRILE, VSS. RESTING AT PRESENT. NO S/S OF DISCOMFORT/DISTRESS NOTED. WILL
CONTINUE TO MONITOR FOR CLINICAL CHANGES.

Patient Teaching:
* Medication Teaching (name/ dose/ frequency/ route/ indication/ and side
effects to report):

*Safety (precautions,medical equipment, discharge):

```
DATE: 06/30/09 @ 1803           Lemuel Shattuck Hospital              PAGE 5
USER: BBEAZER                      List Patient Notes
```

Patient: **HENNESSEY,EDMUND**
Account #: LS0002950152                    Unit #: LS00116873

|  | Date | Time | By |  | Care Prov | Type | (Continued) |
|---|---|---|---|---|---|---|---|
| Occurred: | 06/30/09 | 0409 | ANA Anna Nancy Accime |  | RN |  |  |
| Recorded: | 06/30/09 | 0425 | ANA Anna Nancy Accime |  | RN |  |  |

Category: Nurse

  *Methods and Response to Teaching:

  *Barriers to teaching if any:

| Note Type | Description | Date | Time | Add |
|---|---|---|---|---|
| Problem | Pain: Intrapartal | 06/30/09 | 0409 |  |

|  | Date | Time | By |  | Care Prov | Type |
|---|---|---|---|---|---|---|
| Occurred: | 06/30/09 | 1436 | ACC Ada C Chikere |  | RN |  |
| Recorded: | 06/30/09 | 1444 | ACC Ada C Chikere |  | RN |  |

Category: Nurse

  Nursing Discharge Note

  * Brief Summary of Hospitalization:
  The patient, HENNESSEY,EDMUND, 58 y/o, M admitted by CARRILLO,ADRIANA MD, to
  8NO.L for right hip Osteoarthris and pain. Total hip arthroplasty to be
  scheduled to a later date. Alert and oriented, gait is usteady.

  * Date and Time of Discharge:  6/30/09 @ 9:53AM

  * Discharge Disposition:  SBCC

  * Signs/symptoms to report to health care professionals: Severe pain to
  affected hip fever, chills

  * Dietary restrictions if indicated:  None

  * Discharge medications/instructions (name/ dosage/ frequency/ route):
  EC ASA 81mg po daily
  Voltaren 75mg bid    Vasotec 20mg bid        Pepcid 20mg bid
  Atenolol 25mg bid    MS Contin 30mg TID
  * Activities restrictions if indicated:

  * Follow-Up Care:

  * Other Teachings:

| Note Type | Description | Date | Time | Add |
|---|---|---|---|---|
| No Link |  | 06/30/09 | 1436 |  |

# Exhibit 25

# LEMUEL SHATTUCK HOSPITAL
### 170 Morton Street
### Jamaica Plain, MA  02130
### (617) 522-8110

## LSH DISCHARGE SUMMARY

**Patient Name:** HENNESSEY,EDMUND
**Medical Record Number:** LS00116873                 **Account Number:** LS0002975027
**Ordering Doctor:**
**Associated Orders:**                                **Adm/Reg Date:** 08/05/09
**Date/Time Report Entered:** 08/22/09 1921           **Patient Location:** 8NO.L
**Discharge Date/Time:** 08/14/09 1750

---

~~DATE OF ADMISSION: August 05, 2009.~~

DATE OF DISCHARGE: August 14, 2009.

ADMISSION DIAGNOSIS:
Right hip osteoarthritis.

DISCHARGE DIAGNOSES:
1. Right hip osteoarthritis.
2. Status post right total hip arthroplasty.

SERVICE:
Orthopedics, Dr. Carrillo.

CONSULTATIONS:
1.  Physical therapy.  Patient was orginally seen by the physical therapist on
    August 7, 2009 which was postop day 1.  He was seen five times per week
    until he was discharged.  He was assisted in improving his range of motion,
    transfer ability and ambulation. He was educated on total hip precautions. He
    is currently weightbearing as tolerated on the right lower extremity and
    ambulating with a rolling walker.

PROCEDURE:
The patient underwent a right total hip arthroplasty with Biomet noncemented
hardware on August 06, 2009.  This procedure was done by Dr. Carrillo and Dr.
Heller.  He tolerated the procedure well and there were no complications.

HISTORY AND PHYSICAL EXAMINATION:
The patient is a 58-year old Caucasian male who had been experiencing right hip
pain for approximately 10 years.  He reported that it had prgressively gotten
worse over the years.  He suffered a fall in February 2007 and sustained a right
femoral neck fracture.  He had severe difficulty ambulating since then and had
to use the assistance of a rolling walker.  Of note, the patient also has a
past medical history that consists of Legg-Calve-Perthes.

General:  The patient is a 58-year-old Caucasian male who appears to be well
developed and well nourished.  He is alert and oriented x3 and in no acute
distress.  Vitals: Temperature 100.1, pulse 70, respiratory rate 20, blood
pressure 104/59, pulse oximetry 96%.  Cardiac: Regular S1, S2. No murmurs, no
rubs, no gallops.  Lungs: Clear to auscultation bilaterally.  No wheezes, no
rales, no rhonchi.  Abdomen:  Bowel sounds x4, non-tender, nondistended, no
palpable masses.  Musculoskeletal:  Examination of the patient's right hip
reveals that the surgical incision is well healed.   There is no evidence of
drainage or bleeding from the site.  There is no erythema or swelling adjacent to

**LEMUEL SHATTUCK HOSPITAL**
**LSH DISCHARGE SUMMARY**

HENNESSEY,EDMUND          MEDICAL RECORD NUMBER: LS00116873
the incision.  He has decreased range of motion however, it has improved since
the surgery.  He has later stages of ecchymosis throughout the thigh.  The patient
is steady in ambulating weight-bearing as tolerated on the right lower extremity
while using a rolling walker.  Vascular:  The patient has 2+ pulses in the lower
extremities bilaterally.  His calves are soft and non-tender and there are no
signs of a DVT.  Neuro:  The patient has good sensation throughout his lower
extremities bilaterally.

The patient has x-rays of the right hip on 08/06/09.  These x-rays revealed that
the right total hip arthroplasty was in good anatomical position.  There was no
evidence of fracture.

HOSPITAL COURSE:
The patient underwent a right total hip arthroplasty on August 6, 2009.  He
tolerated the procedure well and there were no complications.  His blood levels
were monitored postoperatively to determine whether or not he would require a
blood tranfusion.  On post-op day two, the patient's hematocrit and hemoglobin
dropped significantly and he was symptomatic, therefore the decision was made to
transfuse him with two units of packed red blood cells.  He tolerated the
transfusion well.  The patient was hemodynamically stable prior to discharge.

The patient was seen by physical therapy daily to work on range of motion
exercises, transfers, and his ability to ambulate.  The patient was educated on
total hip precautions and these were enforced throughout his stay.  He is steady
in ambulating with a rolling walker.

DISCHARGE CONDITION:
Good.

DISPOSITION:
The patient will be discharged to MCI Shirley.  He has been accepted by Debbie, a
nurse at the facility and Lynn Davis.

MEDICATIONS:
1.   Atenolol 25mg p.o. b.i.d
2.   Vasotec 20mg p.o. b.i.d
3.   Metamucil i tbsp p.o. b.i.d
4.   Pepcid 20mg p.o. b.i.d
5.   Lovenox 30 mg sq b.i.d x 2 weeks for DVT prophylaxis
6.   Baclofen 20mg p.o. b.i.d
7.   Colace 100mg p.o. b.i.d
8.   Tylenol 650mg p.o. q.6.h prn fever > 101
9.   Oxycontin 10mg p.o. b.i.d
10.  Percocet 5/325 i tab p.o. q.4.h prn pain x1 week

INSTRUCTIONS:
The patient will need to have his staples removed 10-14 days post-op depending on
healing.  Until that point, the incision should be covered with a dry, sterile
dressing.  After the staples are removed, the incision can remain open to air.

The patient is currently weight-bearing as tolerated and ambulating with a
rolling walker.  He has been instructed on how to do physical therapy exercises
on his own however, he will also be receiving physical therapy at Shirley.  He
would benefit from continued physical therapy to work on range of motion,
stretching, and strengthening exercises.

He has been on Lovenox for DVT prophylaxis for the last 8 days and will need to
continue on this medication for another 2 weeks.  He should continue to follow the
total hip precautions as instructed by the physical therapist.  The patient

**LEMUEL SHATTUCK HOSPITAL**
**LSH DISCHARGE SUMMARY**

HENNESSEY,EDMUND                MEDICAL RECORD NUMBER: LS00116873
should also be given pain medication for another week.

FOLLOW-UP:
The patient should follow-up in the Lemeul Shattuck Hospital Orthopedic Clinic
on August 27, 2009.

**Signed by:** <<Signature on File>>
**Signed by date/time:** 09/14/09 0857

**Dictated by:** Tortolano, Andrea PA

**Co-Signed by:** <<Signature on File>>
**Co-Signed by date/time:** 09/16/09 0952
**Co-Dictated by:** CARRILLO, ADRIANA MD

**Dictated Date/Time:**   08/21/09 2209

# Exhibit 26

**Draft**

# LEMUEL SHATTUCK HOSPITAL
## 170 Morton Street
## Jamaica Plain, MA  02130
## (617) 522-8110

## LSH NUTRITIONAL ASSESSMENT

**Patient Name:** HENNESSEY,EDMUND
**Medical Record Number:** LS00116873                          **Account Number:** LS0002975027
**Ordering Doctor:**
**Associated Orders:**
**Adm/Reg Date:** 08/05/09                                     **Patient Location:** 8NO.L
**Date/Time Report Entered:** 08/10/09 1422

---

Diagnosis/Current Medical Problems:
right hip pain

Previous Medical History:
HTN, COPD, GERD, Legg-Calve-Perthes disease

Medications w/ Nutritional Implications:
Percocet, Tylenol, Colace

Nutrition Care Order:
Regular

Food Allergies     NKFA
Cultural/Religious Preferences:          n/a
Nausea:  N     Vomiting:  N     Diarrhea:  N      Constipation:   Y
Problems chewing:    N      Problems swallowing:    N
Labs: Date:   08/05/09                                                          Glucose:  81
Sodium:  143          Potassium:  4          Chloride:  105        $CO_2$:  31
BUN:  18          Creatinine:  1.1          Albumin:  3.8        Calcium:  9
Corrected Calcium:    n/a        Phosphorus:  3.2       Magnesium:  1.8
Other Pertinent Labs:
Height:  5'7     Weight:  287#      Usual Body Weight:     n/a
% Ideal Body Weight:        194%          Ideal Body Weight:     148#          +\-10%
Adjusted Body Weight:       183#

Estimated Energy Needs:       basal metabolic rate = 2083 kcal/day x 1.2 stress
                              factor = 2500 kcal/day (Mifflin-St. Jeor)
Estimated Protein Needs:      83-100 g/day at .8-1 g/kg AdjBW

Estimated Fluid Needs:        2.5 L/day at 1mL/kcal

Nutrition Care Indicators

---

**LEMUEL SHATTUCK HOSPITAL**
**LSH NUTRITIONAL ASSESSMENT**

HENNESSEY,EDMUND                    MEDICAL RECORD NUMBER: LS00116873

| CATEGORY | 4 POINTS | 3 POINTS | 2 POINTS | 0 POINTS |
|---|---|---|---|---|
| Appetite/Intake | . | . | . | . x |
| Diet Order | . | . | . | . x |
| Unintentional Weight Loss | . | . | . | . |
| Weight Status | . x | . | . | . |
| Albumin | . | . | . | . x |
| Diagnosis | . | . | . | . x |

NUTRITION STATUS DETERMINATION

Total Nutrition Care Priority Points:      4

Status 4 (severe compromise (12+ points)
Status 3 (moderate compromise (8-11 points)
Status 2 (mild compromise (6-7 points)
Status 1 (normal nutritional status (0-5 points)      Y
Assessment:
Pt is a 58 y.o. male with Legg-Calve-Perthes syndrome, who has experienced
progressively worse hip pain over the past 10 years. Pt suffered a fall in
February of 2007 which resulted in a right femoral neck fracture. He has
been having difficulty ambulating since that time. MRI revealed avascular
necrosis. He was admitted for a right total hip replacement. Following
the procedure his Hgb/Hct dropped, and he was transfused 2u of PRBC's. He
is now working with PT.

Nutritionally, the pt is assessed at normal nutrition status secondary to
adequate PO intake, Albumin WNL (prior to surgery). Estimated nutrient
needs are calculated for maintenance, current diet order is appropriate.
The pt is consuming 75-100% of meals, likely his nutrient needs are being
met. Post-operatively, I would encourage PO protein intake. Pt is
currently at 194% of his ideal body weight, BMI of 44 classifies the pt as
morbidly obese. He would benefit from weight loss upon discharge. I would
consider checking a lipid panel in this pt. Pt has a history of HTN, but
his BP is currently running low to normal. He would likely benefit from a
low sodium diet.

Labs: Largely WNL. Albumin has dropped post-operatively, which is
expected. Will continue to monitor, and encourage protein intake.

Goals: 1) wound healing  2) Albumin >3.5
Plan/Intervention:
1) Pt would benefit from a low sodium diet
2) Recommend checking a lipid panel
3) Monitor weight, chems, nutritional status and clinical changes
4) F/U within 30 days and assist PRN

Discharge Planning:
Need for Education:      Y  diet/menu
Education Provided:      Y  8/10/09

Signed by:
Signed by date/time:
Dictated By: Laura R Kennedy

Co-Signed by:

LA: P.SOUSA;P.SOUSA2|

**LEMUEL SHATTUCK HOSPITAL**
**LSH NUTRITIONAL ASSESSMENT**

**HENNESSEY,EDMUND**                 MEDICAL RECORD NUMBER: LS00116873
**Co-Signed by date/time:**
**Co-Dictated By:**

**Dictated Date/Time:**  08/10/09 1253

**Date/Time Report Entered:** 08/10/091422

# Exhibit 27

## LEMUEL SHATTUCK HOSPITAL
### 170 Morton Street
### Jamaica Plain, MA 02130
### (617) 522-8110

## LSH DISCHARGE SUMMARY

**Patient Name:** HENNESSEY,EDMUND
**Medical Record Number:** LS00116873      **Account Number:** LS0003460789
**Ordering Doctor:**
**Associated Orders:**      **Adm/Reg Date:** 12/15/10
**Date/Time Report Entered:** 01/25/11 0628      **Patient Location:** 8NO.L
**Discharge Date/Time:** 01/05/11 1536

```
DATE OF ADMISSION:
December 15, 2010.

DATE OF DISCHARGE:
January 05, 2011.

ADMISSION DIAGNOSIS:
Severe osteoarthritis of the left hip.

DISCHARGE DIAGNOSES:
1. Severe osteoarthritis of the left hip.
2. Status post left total hip arthroplasty.

SERVICE:
Orthopedics, Dr. Carrillo.

CONSULTS:
1. Physical Therapy. The patient was seen by physical therapist first day
   postop. He was seen 5 days per week until he was discharged. He was
   assisted in improving his range of motion, ability to transfer and his
   ambulation. He was instructed to be weightbearing as tolerated on the left
   lower extremity, and ambulate originally with a walker and progress to
   bilateral axillary crutches. The patient was also educated on total hip
   precautions.
2. Psychiatry. The patient was seen by the psychologist on January 04, 2011,
   due to some sadness and depression after finding out his brother had passed
   away 2 days prior to that. He was deemed mentally stable and did not require
   any precautionary watch. The visit was mostly for supportive purposes.

PROCEDURES:
1. Left total hip arthroplasty with Biomet noncemented hardware on December 16,
   2010. This procedure was done by Dr. Heller and Dr. Carrillo.
2. Right internal jugular central venous catheter placement. This procedure
   was done on December 16, 2010, by Dr. Langerman.

HISTORY AND PHYSICAL EXAMINATION:
Mr. Hennessey is a 60-year-old, Caucasian male who presented to Lemuel Shattuck
Hospital on multiple occasions to have his left hip evaluated. The patient was
found to have severe osteoarthritis of the left hip from wear and tear. He had
been experiencing hip pain for approximately 10 years. The patient had undergone
a right total hip arthroplasty in August 2009 and had excellent results. He had
continued to ambulate with a rolling walker secondary to compensating for the
condition of the left hip. He was having difficulty ambulating independently, as
well as donning his shoes and socks secondary to left hip pain. Thus he was
scheduled for a left total hip arthroplasty as soon as possible.
```

```
Page: 1
LA: P.SHI;P.SHI2|
Date Report Last Updated: 02/03/11
```

**LEMUEL SHATTUCK HOSPITAL**
**LSH DISCHARGE SUMMARY**

**HENNESSEY,EDMUND**          **MEDICAL RECORD NUMBER: LS00116873**

PHYSICAL EXAMINATION:
GENERAL:  The patient is alert and oriented x3, and in no acute distress. He is pleasant and cooperative.
VITALS:  Temperature 99, pulse 65, respiratory rate 18, blood pressure 110/65, O2 sat 97%.
CARDIAC:  Regular S1, S2. No murmurs, no rubs, no gallops.
LUNGS:  Distant breath sounds; however, clear to auscultation bilaterally. No evidence of wheezing, rales or rhonchi.
ABDOMEN:  Bowel sounds x4, nontender, nondistended. Patient is obese.
MUSCULOSKELETAL:  Examination of the patient's left hip reveals that the patient had Steri-Strips in place. The surgical incision is well healed at this point. There is mild erythema directly adjacent to the incision. There is swelling extending from the patient's left hip to his left ankle; however, it has significantly improved since he has been in-house. The patient has decreased range of motion in the left hip again; however, it has improved since he has been in-house. He is able to move his left ankle without any difficulty as well as all of the toes on the left foot.
VASCULAR:  The patient has 2+ pulses in his lower extremities bilaterally. His calves are soft, nontender, and there are no signs of a DVT.
NEURO:  The patient has full sensation throughout the left lower extremity.

LABORATORIES:
The patient's last labs were drawn on December 30, 2010, which revealed a white blood cell count of 7.2, red blood cell count 3.02, hemoglobin 8.9, hematocrit 28.4. He also had a CMP drawn which revealed a sodium level of 141, potassium 4.5, chloride 101, carbon dioxide 30. BUN 25, creatinine 1.2. Glucose 123. Calcium 8.7. Total bilirubin 0.3. AST 21, ALT 34. Total protein 6.5. Albumin 2.8. Globulin 3.7. Albumin-globulin ratio 0.8. Alkaline phosphatase 98.

IMAGING:
The patient had a hip x-ray obtained on December 16, 2010, which revealed that the left total hip arthroplasty components were all in good placement. There was no evidence of fractures or dislocations. The patient also had a chest x-ray done on that day secondary to being hypotensive and having a new central line placed. The line appeared to be in good placement and there was no pneumothorax noted at that time. The patient had a new right-sided pleural effusion, as well as probable right basilar atelectasis noted at that point. The patient had a follow-up chest x-ray done on December 21, 2010, which revealed a bilateral pleural effusion as evidenced by blunting of the posterior costophrenic angles bilaterally. No evidence of acute infiltrate. Lastly, the patient had a chest x-ray on January 3, 2011, which revealed improved left basilar atelectatic change and improved pleural effusion. No evidence of new infiltrate.

HOSPITAL COURSE:
The patient had undergone a left total hip arthroplasty on December 16, 2010. He tolerated the procedure well. However, postoperatively the patient became quite hypotensive. After the patient had returned to the floor his blood pressure had continued to drop, therefore he was transferred to the ICU. He stayed in the ICU for approximately 24 hours where he received a blood transfusion. The patient had 2 units of packed red blood cells administered on December 16, 2010. He tolerated the transfusion well and his hypotension had significantly improved. Therefore he was transferred back to 8-North on December 17, 2010.  The patient was slightly hypotensive and continued to receive IV fluids for the next 24 hours. He did well after that and continued to work with the physical therapist in improving his range of motion and ability to get out of bed. The patient was found to have slight volume overload, and therefore his Lasix was increased for 3 days and his fluid levels were restricted. The patient did well and his volume levels returned back to normal. The patient was found also to have what appeared

**LEMUEL SHATTUCK HOSPITAL**
**LSH DISCHARGE SUMMARY**

**HENNESSEY, EDMUND**          **MEDICAL RECORD NUMBER: LS00116873**
to be a postoperative pneumonia on December 26, 2010, and was started on
levofloxacin for 7 days. The patient tolerated the medication well and seemed to
improve. He did not have any clinical signs of pneumonia when leaving. He
originally had a productive cough which had completely resolved, and he also
had some shortness of breath for which he was placed on oxygen via nasal
cannula. He progressively improved in terms of his oxygen saturation and no
longer needed the supplemental oxygen.

Prior to leaving, the patient did well in terms of his physical therapy and was
steady in ambulating with bilateral axillary crutches prior to his discharge.

DISCHARGE CONDITION:
Good.

DISPOSITION:
The patient will be discharged to Souza-Baranowski. He has been accepted by Dr.
Hicks.

DISCHARGE MEDICATION:
1. Lasix 20 mg p.o. b.i.d.
2. Prilosec 20 mg p.o. q.h.s.
3. Atenolol 50 mg p.o. b.i.d.
4. Lovenox 40 mg subcu daily (until January 07, 2011).
5. Baclofen 20 mg p.o. b.i.d.
6. Docusate sodium 100 mg p.o. b.i.d.
7. Enalapril 20 mg p.o. b.i.d.
8. Percocet 5/325 one tab p.o. q.4 h. p.r.n. pain.

INSTRUCTIONS:
Mr. Hennessey had his staples removed prior to being discharged. Steri-Strips
had been placed, and he can leave these Steri-Strips in place until they fall
off on their own. The incision appears to be well healed and is not currently
draining, therefore does not need any dressing. The patient has been cleared to
shower. He is currently weightbearing as tolerated on the left lower extremity
and ambulating with bilateral axillary crutches. The patient should continue
working with the physical therapist 2-3 times per week on his ability to
ambulate, transfer, and his range of motion in the left hip. The patient will
also need to maintain the total hip precautions as instructed by the physical
therapist. The patient should use long-handled adaptive equipment in order to
don his shoes and socks in order to maintain these precautions.

The patient received Lovenox during his stay postoperatively for DVT
prophylaxis. He should continue on this medication until January 07, 2011, as
that is when his 3-week course will be completed. The patient was also given
Percocet and OxyContin. He has been slowly decreased to solely the Percocet. We
recommended the patient receive this medication; however, it is up to the
provider at the facility to determine what pain medication will be provided.

Also recommended at this time is for the patient to have calcium and vitamin D
added to his medication regimen secondary to osteoporosis. The patient should
follow up via telemedicine in 6 weeks which is approximately February 17, 2011.
**Signed by:** <<Signature on File>>
**Signed by date/time:** 01/31/11 1228

**Dictated by:** Tortolano, Andrea PA

**Co-Signed by:** <<Signature on File>>

Page: 3
LA: P.SHI;P.SHI2|
Date Report Last Updated: 02/03/11

LEMUEL SHATTUCK HOSPITAL
LSH DISCHARGE SUMMARY

HENNESSEY,EDMUND              MEDICAL RECORD NUMBER: LS00116873
Co-Signed by date/time: 02/03/11 1653
Co-Dictated by:  CARRILLO, ADRIANA MD

Dictated Date/Time:  01/24/11 0800

# Exhibit 28

**Draft**

**LEMUEL SHATTUCK HOSPITAL**
**170 Morton Street**
**Jamaica Plain, MA  02130**
**(617) 522-8110**

**LSH NUTRITIONAL ASSESSMENT**

**Patient Name:** HENNESSEY,EDMUND
**Medical Record Number:** LS00116873                    **Account Number:** LS0003460789
**Ordering Doctor:**
**Associated Orders:**
**Adm/Reg Date:** 12/15/10                               **Patient Location:**  8NO.L
**Date/Time Report Entered:** 12/20/10 1259

Diagnosis/Current Medical Problems:
Left hip pain, now s/p left total hip arthroplasty 12/16

Previous Medical History:
HTN, GERD, s/p right total hip arthroplasty 2009, s/p rhinoplasty 1987, s/p
appendectomy at age 5
Medications w/ Nutritional Implications:
Lasix, atenolol, baclofen, prilosec, aspirin, enalapril, MS contin

Nutrition Care Order:
Regular diet

Food Allergies    NKFA
Cultural/Religious Preferences:
Nausea:  N    Vomiting:  N    Diarrhea:  N    Constipation:  N
Problems chewing:  N    Problems swallowing:  N

| Labs: Date: | 12/15/10 | | | | | Glucose: | 95 |
|---|---|---|---|---|---|---|---|
| Sodium: | 141 | Potassium: | 4.4 | Chloride: | 103 | CO2: | 27 |
| BUN: | 20 | Creatinine: | 0.7 | Albumin: | 3.7 | Calcium: | 9.3 |
| Corrected Calcium: | | Phosphorus: | | Magnesium: | | | |

Other Pertinent Labs:    (12/15): Hgb 8.3, Hct 25.3
Height:  67"    Weight:  237#    Usual Body Weight:
% Ideal Body Weight:    160%    Ideal Body Weight:    148#    +\-10%
Adjusted Body Weight:    170#

Estimated Energy Needs:      2,180 kcal (@ BMR x 1.2 activity factor)
                             Mifflin-St.Jeor
Estimated Protein Needs:     62g-77g (@ 0.8-1 g/kg BW)

Estimated Fluid Needs:       2.2L (@ 1 mL/kcal)

Nutrition Care Indicators

| CATEGORY | 4 POINTS | 3 POINTS | 2 POINTS | 0 POINTS |
|---|---|---|---|---|

Page: 1
LA: P.SHI;P.SHI2|

LEMUEL SHATTUCK HOSPITAL
LSH NUTRITIONAL ASSESSMENT

HENNESSEY, EDMUND                    MEDICAL RECORD NUMBER: LS00116873

| | | | | |
|---|---|---|---|---|
| Appetite/Intake | . | . | . | . X |
| Diet Order | . | . | . | . X |
| Unintentional | | | | |
| Weight Loss | . | . | . | . X |
| Weight Status | . | . X | . | . |
| Albumin | . | . | . | . X |
| Diagnosis | . | . | . | . X |

NUTRITION STATUS DETERMINATION
Total Nutrition Care Priority Points:      3


Status 4 (severe compromise (12+ points)
Status 3 (moderate compromise (8-11 points)
Status 2 (mild compromise (6-7 points)
Status 1 (normal nutritional status (0-5 points)          Y
Assessment:
A: This is a 60 y/o male admitted with left hip pain and is now s/p left
total hip arthroplasty 12/16/10. Post-surgery, the pt had blood loss with
hypotension, so he was treated with 2 units PRBCs in ICU before being
transferred to 8N for recovery and physical therapy. He has a PMH which
includes HTN, GERD, s/p right total hip arthroplasty 2009, s/p rhinoplasty
1987, s/p appendectomy at age 5. He was seen at his bedside this morning
where he reported that his appetite is good and that he hasn't been having
any trouble with N/V/D/C or problems C/S. No recent weight gain or loss
reported. NKFA.

He is 160% IBW with a BMI of 37.2, which is Stage II obese. Once he is
clinically stable, he could benefit from a steady, healthy weight loss of
1-2# per week. But until then, weight maintenance is appropriate. He is
prescribed the regular diet, which will likely meet his energy and
maintenance needs.

Labs unremarkable with the exception of falling hgb and hct, even after
blood transfusion. He is asymptomatic and oxygen is available for him PRN.
Will monitor. A brief verbal education was provided on the regular diet and
menu system as well as food interactions with Lasix. The pt was attentive
and compliance is expected to be good.

He currently assesses at normal nutritional status secondary to good
appetite, regular diet, and albumin WNL.

D:  No nutrition diagnosis at this time.

I: General/healthful diet: continue diet order.
 Goals: Pt's nutritional needs are met
  PO intake > 75% EEN 2,180 kcal
  Stable weight
Plan/Intervention:
M/E: Monitor PO intake
        Monitor weight
        Follow up in 30 days and assist PRN

Haley Andersen
Dietetic Intern


Discharge Planning:
Need for Education:      Y  Regular diet and menu system and lasix

Page: 2
LA: P.SHI;P.SHI2|

**LEMUEL SHATTUCK HOSPITAL**
**LSH NUTRITIONAL ASSESSMENT**

HENNESSEY,EDMUND                    MEDICAL RECORD NUMBER: LS00116873
Education Provided:      Y  Verbal education provided, as above

**Signed by:**
**Signed by date/time:**
**Dictated By:**  Kristin E Heidbreder

**Co-Signed by:**
**Co-Signed by date/time:**
**Co-Dictated By:**

**Dictated Date/Time:**  12/20/10 1253

**Date/Time Report Entered:** 12/20/101259